**Michael Duval LEE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–658.**

Court of Criminal Appeals of Oklahoma.

March 14, 1977.

E. Terril Corley, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Doug Combs, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

This is a timely appeal by Michael Duval Lee, hereinafter referred to as defendant, from the judgment and sentence rendered against him in the District Court, Tulsa County, Case No. CRF–75–2657, for the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2. His punishment was fixed at a term of ten (10) years to life imprisonment.

In the non-jury trial, conducted before the Honorable William W. Means, the evidence established that on November 5, 1975, Mr. and Mrs. Beaurman were proceeding toward their home in Tulsa, Oklahoma, turning off Peoria Avenue onto a service road, where they encountered a group of boys standing in the road. Mr. Beaurman stopped the car, requested that the boys move and after an exchange between Mr. Beaurman and the boys, both Mrs. Beaurman and witness David VanKirk observed two boys run to a nearby carport. Mrs. Beaurman requested that the boys not continue to throw stones at her husband, as he was an old man, and when they failed to do so, she went to a nearby residence to telephone the police. At that time she heard one of the boys standing near the carport, say, "get the gun, get the gun." [Tr. 14] When she reached the residence she found that the police had already been called. She heard pistol shots, saw her husband stagger back toward the car, wounded.

Mr. VanKirk observed the defendant standing under the carport, pointing something at Mr. Beaurman, heard shots ring out, and observed that Mr. Beaurman was wounded. Mr. VanKirk testified and identified the defendant, in court, as being the person who was in the carport pointing at Mr. Beaurman.

By stipulation, the report of Dr. Beamer was admitted into evidence. This report established that Mr. Beaurman died as a result of a gunshot wound inflicted by a .22 caliber bullet.

Investigating Officer David Freiberger identified State's Exhibit No. 5, as a projectile removed from the body of William Beaurman by Dr. Lee Beamer. He also identified State's Exhibit No. 6 as a .22 caliber revolver which he found just northeast of 1743 East 36th Street North.

Detective Charles Sasser testified that on November 5, 1975, he assisted in the investigation of the death of William Beaurman. The following afternoon he proceeded to the defendant's house where he arrested the defendant, who informed him that Mr. Taft Peevy was his grandfather. Mr. Peevy acknowledged that he was defendant's grandfather and was advised at the home that since the defendant was a juvenile he could not be questioned without Mr. Peevy's being present, and Mr. Peevy was requested to come to the police station, to which he agreed. Prior to leaving for the police station, the defendant was advised of his Miranda rights at the home, in the presence of Mr. Peevy. While the defendant was being taken to the police station, Mr. Peevy called Mr. Robert Copeland, an attorney, and requested that he come to the police station where the defendant was being held. Mr. Peevy arrived before attorney Copeland and again the defendant was advised of his Miranda rights in the presence of Mr. Peevy. The defendant stated

he understood these rights, but that he did not understand about the "juvenile part of trial by jury." Mr. Peevy, who was a businessman and had previously served on juries and appeared as a witness, then proceeded to explain the defendant's Miranda rights to him and his rights as a juvenile. Thereafter, in the presence of Mr. Peevy, Detective Sasser testified that the defendant stated that he and four other boys were walking south on the access road to Peoria Avenue; that a brown car came speeding north by them and put on its brakes. A man jumped out of the car and the four other boys began to throw rocks at the man. The man started running toward him and "he thought the man had a black box or a black case in his hand and that when the man ran toward him, Michael Duval Lee shot at the man seven times." [Tr. 93]

On examination by defense counsel, Officer Sasser testified the defendant had, in fact, admitted the crime (as set forth above), before Mr. Copeland arrived. Officer Sasser thereafter related he had ascertained that Mr. Peevy was Michael's guardian when he arrested the defendant and further stated that Mr. Peevy had stated to him he was responsible for the defendant and had raised him.

Upon examination by the court, Officer Sasser related the events occurring when he arrested the defendant at the home of his grandfather and once again informed the court that Mr. Peevy had at that time stated that he was responsible for the defendant and had raised him since his childhood. Officer Sasser once again testified he advised Mr. Peevy that he needed a parent or guardian to come to the police station before he could question the defendant and Mr. Peevy agreed to do so.

During the course of the non-jury trial, defendant moved to suppress the evidence of the confession and in support of that motion elicited the following information from Mr. Taft Peevy:

(1) That Peevy was married to the grandmother of the defendant, who was given legal custody of the defendant after

defendant's mother had been killed by his father;

(2) The defendant had resided in the Peevy home for a number of years and continued to reside there and his father, an ex-convict, visited him occasionally, but was not notified or present during the interrogation;

(3) The grandmother was not at the home when the defendant was arrested, not notified, nor present prior to interrogation;

(4) The detective did not inform him of his Miranda rights, but that he was present when the defendant was informed of the Miranda warnings;

(5) Mr. Peevy had never been awarded legal custody of the defendant.

The same argument before the trial court is contained in his single assignment of error urged on appeal that the confession given by the defendant was inadmissible for the reason that the interrogation of the defendant did not meet the requirements of 10 O.S.1971, § 1109. Said statute provides, as follows:

"(a) No information gained by questioning a child shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer or investigative agency, or employee of the court, or the Department is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child, and not until the child and his parents, or guardian, or other legal custodian shall be fully advised of their constitutional and legal rights, including the right to be represented by counsel at every stage of the proceedings, and the right to have counsel appointed by the court and paid out of the court fund if the parties are without sufficient financial means; provided, however, that no legal aid or other public or charitable legal service shall make claim for compensation as contemplated herein.

"(b) If the child or his parents, guardian, or other legal custodian requests an attorney and is found to be without suffi-

cient financial means, counsel shall be appointed by the court if the child is being proceeded against as a delinquent child, or a child in need of supervision, or if termination of parental rights is a possible remedy, provided that the court may appoint counsel without such request, if it deems representation by counsel necessary to protect the interest of the child or of other parties.

"(c) Upon the request of the court, the district attorney shall prepare and prosecute any case or proceeding within the purview of this act."

Defendant argued that the case of *J. T. P. v. State,* Okl.Cr., 544 P.2d 1270 (1975) and *Crook v. State,* Okl.Cr., 546 P.2d 648 (1976), require a reversal of this case by reason of the admission of said confession.

■ Defendant further asserted before the trial court, and urges on appeal, that since the confession was inadmissible there was not sufficient evidence independent of said confession to support the finding of the trial court. An examination of the trial transcript discloses that the trial court made substantially the following ruling: That although it did not affirmatively appear Mr. Peevy was ever advised of the Miranda rights, Mr. Peevy was present and assisted in explaining the defendant's rights to him; had called an attorney prior to going to the police station where the questioning occurred; thoroughly understood the defendant's rights as they were explained to the defendant in his presence; and that under these circumstances was capable of assisting and advising the defendant of his rights, substantially meeting the requirements of the statute and *J. T. P. v. State,* supra. The reasoning behind the court's ruling was that the necessity for advising a parent, guardian, or custodian of a juvenile was for the benefit of the juvenile and that the purpose of the explanation of Miranda rights was to enable the person standing in *loco parentis* to counsel and advise with the juvenile prior to his making a statement.

With this conclusion we wholeheartedly agree and are persuaded that under the facts here presented the trial court's ruling was imminently correct. We are of the opinion that the defendant's argument that the evidence of the confession should have been excluded since Mr. Peevy was not the lawful custodian of the defendant must fail. Although Mr. Peevy was not the legal guardian or the person having legal custody of the defendant, the undisputed facts are that he was the *de facto* custodian of the defendant, had represented himself as the grandfather of the defendant, had called an attorney, had explained the defendant's juvenile rights to him, had been present during the oral confession and when the defendant signed the written statement after conferring with Mr. Robert Copeland, the attorney called by Mr. Peevy. Certainly, the State had a right to rely on the statements made by the defendant and Peevy; therefore, the statute and the decisions of *J. T. P. v. State,* supra, and *Crook v. State,* supra, were substantially complied with. We are of the opinion, and therefore hold, that the trial court did not err in overruling the defendant's Motion to Suppress.

We are likewise of the opinion that although the confession was properly admitted, independent of said confession there was ample evidence to support the trial judge's finding that the defendant was guilty. The trial court, in finding the defendant guilty, stated, ". . . that there is sufficient circumstantial evidence to convict this defendant absent the confession."

■ Even had the confession been inadmissible under the facts here presented, its consideration by the trial court would have been harmless error under the rule enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

For all of the reasons above set forth, the judgment and sentence appealed from is *AFFIRMED.*

BLISS, J., concurs.

BRETT, J., specially concurs.

BRETT, Judge, specially concurring.

I concur as to the admissibility of the confession on the ground that the defendant's step-grandfather was the de facto custodian of the defendant, thereby meeting the requirements of 10 O.S.1971, § 1109(a). Had the defendant not conferred with attorney Copeland before giving his inculpatory signed statement, I would have held that any statements made by the defendant prior to the arrival of counsel were inadmissible. However, in signing the statement upon advice of counsel, defendant effectively waived any irregularities in eliciting statements from him prior to the arrival of counsel. Therefore, I concur in the result of the majority.