**In the Matter of Mark DAVIDSON, a male child under the age of 18 years.**

**No. J–77–159.**

Court of Criminal Appeals of Oklahoma.

May 16, 1977.

J. W. Doolin, Ryland L. Rivas, Lawton, for appellant.

Don W. Beauchamp, Dist. Atty., Robert M. Looney, Asst. Dist. Atty., Comanche County, for appellee.

## OPINION

BRETT, Judge:

Appellant, Mark Davidson, a juvenile, appeals from an order the Juvenile Division of the District Court, Comanche County, Oklahoma, Case No. JFJ–77–5, waiving jurisdiction over him, and empowering the State to prosecute him as an adult upon three charges of Armed Robbery.

The appellant was charged with three counts of Armed Robbery, one perpetrated against an individual on or about the third day of December, 1976; one of a filling station on or about the fifth day of January, 1977; and, one of a liquor store on or

about the fifth day of January, 1977. The appellant was arrested on January 5, 1977, following the robbery of the liquor store. On January 7, 1977, the State filed a motion to certify the appellant.

On January 25, 1977, the State presented evidence regarding prosecutive merit, which for purposes of determining probable cause that the crimes charged took place and probable cause that the appellant committed the crimes charged established the following facts. At approximately 8:00 p.m. on January 5, 1977, two young men in ski masks, one of whom was wearing an Army field jacket and one of whom was wearing a dark colored coat, committed an armed robbery at Bob's Shamrock Station in Lawton, Oklahoma. One of them was armed with a .38 caliber automatic gun. As the two young men were leaving the station after committing the armed robbery, a witness drove up to the station and saw the two young men, who were still wearing the ski masks over their faces, running out of the station. They got into a Ford Torino, which had a license plate number CA 5654. The witness followed the Torino for awhile and then returned to the scene of the crime where he told the policeman the license plate number and gave him a description of the car.

At approximately 8:50 p.m. on the same evening, two young men, one of whom was wearing a field jacket and red ski cap and blue jeans, entered Isaac's Liquor Store, also in Lawton, Oklahoma, and asked the clerk for a fifth of Jim Beam whiskey. One of the two then pulled a small black automatic revolver, threatened the clerk, and the two left taking with them approximately $100.00 and a fifth of Jim Beam whiskey. The clerk from the liquor store identified the defendant at the preliminary hearing.

Another witness testified that she had been robbed by a young man with a gun early in December of 1976, when she was making a deposit at the Sheridan Bank in Lawton. At the preliminary hearing, the witness identified the appellant as her assailant. She stated that she had picked him out of a lineup previously and that he had

been wearing a belt which had the name "Mark" carved into the back of it at the time of the robbery.

Roy Deck, a detective of the Juvenile Division of the Lawton Police Department, testified at the preliminary hearing that at approximately 9:50 p.m. on January 5, 1977, he was dispatched as a backup unit to an alarm call from a silent alarm at Isaac's Liquor Store. At that time he had no description of the suspected armed robbers, but he went to the scene looking for suspicious looking characters. At approximately 8:51 he noticed a light colored Torino with license plate number CA 5654, which matched the description of a vehicle reported to have been involved in the earlier armed robbery of the Shamrock station. The detective followed that car for a time but then lost it. He then went to the address of the registered owner of the vehicle, appellant's stepfather. While in that neighborhood Detective Deck again spotted the light colored Torino. At this time he noticed two people in it, one of whom was wearing a field jacket and one of whom was wearing a blue parka with a hood. He pulled up beside the car, and the two persons in the car jumped out and started running. The detective followed them on foot. Detective Deck identified appellant as being the young man who was wearing the blue jacket. Another Lawton police officer who was present at the time of the arrest testified that the appellant's companion was carrying a fifth of Jim Beam whiskey and keys and some money at the time of the arrest.

Another detective from the Juvenile Division of the Lawton Police Department, Ronald Kent Ward, reported that he had questioned the appellant. He stated that he had read appellant his rights from the form as the appellant read along with him, prior to questioning. The appellant then signed the waiver of rights and said that he understood his rights. Detective Ward then took an oral statement from the appellant. Ward later took a written statement, typing the question asked and then typing the verbatim answer given by appellant. De-

tective Ward stated that the appellant's stepfather had been present during the entire proceeding. The State entered into evidence the appellant's signed waiver of rights, which was witnessed by the appellant's stepfather, and the appellant's statement to the police in which he admitted his involvement in all three of the armed robberies charged. The appellant presented no evidence, and at the close of that portion of the hearing the lower court judge found that there was prosecutive merit to the charges filed against appellant.

The hearing was continued until February 9, 1977, at which time evidence was presented regarding the appellant's amenability to rehabilitation under the juvenile system. The State's first witness regarding appellant's amenability to rehabilitation was Billy R. Dunford, a member of the Lawton Police Department, who stated that he previously had had contact with the appellant when the appellant had been arrested for shoplifting a carton of cigarettes at a Humpty Dumpty Store in Lawton.

The State's second witness was Ted Stevens, a clinical psychologist who was coordinator and chief psychologist at the Regional Guidance Center of the Health Department. Stevens stated that he had interviewed the appellant for a total of approximately two hours. He reported that in his opinion the appellant was "pretty intelligent," that he was of "at least average intelligence," that he knew right from wrong, that he understood the consequences of his acts, and that he was capable of adult behavior. Stevens stated that in his opinion it would be possible to rehabilitate the appellant within the juvenile system, but that the appellant would be likely to revert to his old habits if he did not get rehabilitative treatment for approximately four years. At that point the State rested its case.

The appellant called three witnesses, the first of whom was Fred Carrasquillo, a juvenile officer, or counselor, with the Juvenile Bureau of Comanche County. Carrasquillo, who had spent approximately two hours interviewing the appellant, reported that in his opinion the appellant knew that

armed robbery was against the law, but that he had acted worried learn the possible punishment for his acts. Carrasquillo stated that in his opinion it would take approximately three to four years to rehabilitate the appellant.

The appellant's second witness was his mother, Catherin Codopony, who stated that the 17-year-old appellant had received four to five years of formal education while he was living in London, England. She further testified that the appellant had been living with her and his stepfather since some time in 1975. She stated that she thought he did not know the difference between right and wrong because he was always teasing his younger brothers. She also stated that she thought he did not understand the consequences of his acts because he kept saying "but it wasn't that wrong. There was no bullets in the gun." She said he was easily influenced by his friends, and that a friend had told him he would not get in "bad trouble" if there were no bullets in the gun. The appellant's mother also testified that he had been picked up for petty thievery, possibly as many as five times, when he was living in London, England. The appellant's mother testified that the appellant had gone through the court system in England, but that as far as she knew he had never been declared a juvenile delinquent, and that he had served no jail time.

The appellant's last witness was the appellant himself, who testified after an extensive discussion with the judge in which the judge determined that the appellant understood about the right against self-incrimination. The appellant corroborated his mother's testimony that he had been picked up several times for petty theft in England. He said that he knew stealing was wrong both in England and in Oklahoma, but that he had not understood the extent of punishment in Oklahoma for such crime. He said "I didn't stop to think at the time, like I, you know, because the gun was unloaded and stuff, I wasn't really doing nothing really wrong," but he ex-

plained that he did not mean that he did not know armed robbery was wrong.

After closing arguments, the judge explained to the appellant the findings required under 10 O.S.1971, § 1112, as he made them. First, he explained that armed robbery was a serious offense, serious enough that it at one time was a capital offense in Oklahoma. Second, he found that the three acts of armed robbery were committed in an "aggresive, violent, premeditated, and wilfull manner." Third, he found that the offenses were against both persons and property. Fourth, he reiterated the finding made at the first part of the hearing that there was prosecutive merit to the complaint. Fifth, he found that as there were no adults involved in the commission of the offenses, the question of the desirability of trial and disposition of the entire offense in one court when the appellant's associates in the alleged offense are adults was not relevant. Sixth, he found that considering the testimony given at the hearing, particularly the testimony of the appellant and his mother, the appellant appeared to be intelligent and his maturity was that of most young people his age. Seventh, the court found that the testimony as to the appellant's previous offense of shoplifting in Oklahoma was only as to an arrest and not as to a conviction, and that the court had no way of determining the veracity of the information regarding the extent of the appellant's experiences with the law when he was living in England. Finally, the court found that the current juvenile rehabilitation facilities available to it would be available to the appellant only until he turned 18 years of age.[1] Considering the above listed findings, the court found the appellant knew the difference between right and wrong and that he should be held accountable for his acts, and therefore ordered that he be certified to stand trial as an adult. The trial court incorporated these findings into its order certifying the appellant as an adult to stand trial on the three charges of armed robbery.

Appellant has timely appealed and has filed through two different attorneys both a brief and a supplemental brief, each of which urge two assignments of error. Inasmuch as it is possible to glean coherent propositions of error from the two briefs, the four assignments of error may best be dealt with in two general categories, one dealing with the finding of prosecutive merit and the other dealing with the finding of amenability to rehabilitation within the juvenile system as required by *J.T.P. v. State*, Okl.Cr., 544 P.2d 1270 (1975).

The appellant does not argue specifically that the finding of prosecutive merit made at the end of the January 25 hearing was not proper, except in the context of his discussion of amenability to rehabilitation, but he does urge that the appellant's written statement regarding his participation in the three armed robberies ought not to have been admitted into evidence, first because appellant was accompanied at the questioning by his stepfather and not by a natural parent, and second because there was no affirmative showing that either the child or his stepfather was told before questioning that the court would appoint legal counsel prior to questioning if the appellant requested, and if the appellant were without sufficient financial means to engage his own attorney.

The applicable parts of the applicable statute, 10 O.S.1971, § 1109, read as follows:

"(a) No information gained by questioning a child shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer or investigative agency, or employee of the court, or the Department is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child, and not until the child and his parents, or guardian, or other legal custodian shall be fully advised to their constitutional and legal rights, including the right to be represented by counsel at every stage of the proceedings, and the right to have counsel appointed by the court and paid

1. Appellant will become 18 years of age on October 10, 1977.

out of the court fund if the parties are without sufficient financial means; provided, however, that no legal aid or other public or charitable legal service shall make claim for compensation as contemplated herein.

(b) If the child or his parents, guardian, or other legal custodian requests an attorney and is found to be without sufficient financial means, counsel shall be appointed by the court if the child is being proceeded against as a delinquent child, or a child in need of supervision, or if termination of parental rights is a possible remedy, provided that the court may appoint counsel without such request, if it deems representation by counsel necessary to protect the interest of the child or of other parties."

■ The appellant contends that because he was accompanied by his stepfather rather than by a natural parent at his questioning, his statements were inadmissible into evidence. However, as this Court stated in *Lee v. State*, Okl.Cr., 561 P.2d 566 (1977), a case in which we held that having the defendant's step-grandfather present at the time the defendant was questioned was sufficient:

"... The reasoning behind the court's ruling was that the necessity for advising a parent, guardian, or custodian of a juvenile was for the benefit of the juvenile and that the purpose of the explanation of *Miranda* rights was to enable the person standing in *loco parentis* to counsel and advise with the juvenile prior to his making a statement." (Emphasis original)

See also, *Crook v. State*, Okl.Cr., 546 P.2d 648 (1976), in which this Court held that the defendant's grandmother, with whom he lived part-time, was his custodian or guardian for the purpose of meeting the statutory requirements of 10 O.S.1971, § 1109. In the instant case, the appellant's natural father does not live in the United States, and the appellant has lived with his mother and stepfather in the United States for approximately one and a half years. The appellant does not contend, nor is there any evidence to indicate, that his rights were not adequately protected by the presence of his stepfather at questioning.

■ In the original brief, the appellant contends that there is no evidence that the appellant's stepfather was ever advised prior to the confession that the appellant had a right to have an attorney appointed. The appellant, in the supplemental brief, makes the statement that "the record is devoid of any evidence as to whether Mr. Codapony (sic) or the appellant were ever advised of their right to have Court-appointed counsel present at the interrogation." In the supplemental brief, the appellant further submits that there should have been a positive showing by the State that the appellant and his natural parent or guardian were told of their right to court-appointed counsel, and that as the State failed to do so, the confession should be excluded from evidence. Apparently neither of the appellant's attorneys read State's Exhibits Nos. 1 and 2, both of which were signed by the appellant and witnessed by his stepfather. State's Exhibit No. 1 is the appellant's advice of rights, including a statement that the appellant had a right to have a lawyer before any questions were asked of him, and that if he could not afford a lawyer one would be appointed for him before any questioning, if he wished. That exhibit is dated January 5, 1977, and the time marked at the top is 2231. The time marked by the witnesses' signatures is 2234. State's Exhibit No. 2 is the appellant's five page statement, dated January 5, 1977, at 2354. In the light of those two exhibits, we fail to see how the appellant can seriously contend that there is *no* evidence in the record that appellant was fully informed of his rights. Appellant does not urge that those exhibits were not knowingly and voluntarily signed, so we must hold that any propositions of error regarding the admissibility of the confession are without merit.

Appellant's second assignment of error regards the trial court's decision that the appellant was not amenable to rehabilitation within the juvenile system. In the original brief, the appellant states several

reasons why he contends that the certification was based on a mere scintilla of evidence. First, he says that the trial court's determination that the juvenile was capable of knowing right from wrong was not supported by the evidence in the case. However, Ted Stevens, the clinical psychologist who interviewed the appellant, stated that in his opinion the appellant did know right from wrong. Furthermore, both Fred Carrasquillo, the Juvenile Bureau's juvenile officer or counselor, and the appellant himself testified that while he might not have been aware of the possible punishments for armed robbery, he was aware that committing armed robbery was wrong.

■ Second, the appellant would have us believe that the three separate incidences of armed robbery charged were not serious crimes. However, until 1973 armed robbery was punishable in Oklahoma by death or imprisonment at hard labor for a period of not less than five years, and at the present time it is punishable by imprisonment for life at hard labor in the State penitentiary or for a period of not less than five years. See, 21 O.S.1971, § 801; 21 O.S.Supp.1973, § 801. Therefore, we cannot say that appellant's contention has any merit.

■ Third, the appellant contends that the trial court's finding of prosecutive merit is erroneous. Again we would have to say that the trial court did not err in determining that there was prosecutive merit to the charges. As we discussed above, the statement of appellant in which he admitted his participation in the three crimes charged was admissible into evidence. Furthermore, at the time of the boys' arrest they were driving the car which had been identified previously as the car in which the two persons who robbed the filling station earlier in the evening purportedly had been driving. Furthermore, the woman who was robbed in December reported that her assailant was wearing a western type belt which had the name "Mark" on the back of it. Also at the time the appellant and his colleague were picked up, they were wearing clothes which matched the descriptions of the clothes worn by the armed robbers in the two armed robberies committed that evening. Also, at the time of the arrest, the appellant's colleague had on his person a fifth of Jim Beam whiskey, and a fifth of Jim Beam whiskey had been taken from the liquor store which had been robbed a short time earlier. Taken as a whole, therefore, we think there was more than enough evidence to indicate that the crimes charged had been committed and more than enough evidence to indicate that the appellant had participated in the commission of the three crimes.

■ Appellant next contends that the fact there were no adult co-defendants involved in the offenses charged is important. However, as the trial judge pointed out, the fact that there are no adult co-defendants merely means that the trial court need not consider whether it would be beneficial to try all defendants together in the same proceeding. It would be absurd to say that any time there are no adult co-defendants the juvenile ought not be certified.

Appellant next contends that Ted Stevens did not have a sufficient basis on which to give his opinion that the appellant knew the difference between right and wrong, although he does not amplify his contention. Stevens' credentials were adequately established at trial, and as we pointed out above, his testimony was not the only testimony which could lead one to the conclusion that the appellant did know the difference between right and wrong.

Appellant then points out that the record is "crystal clear" that the appellant has no past record in the United States and that the record is unclear as to what happened in Great Britain. We must point out that the trial judge explained the only evidence as to the appellant's past contacts with law enforcement agencies in the United States was a record of an arrest, and not of a conviction. The trial judge further pointed out that due to the discrepancy in testimony regarding the defendant's contacts with the police in Great Britain, he would have to disregard that testimony.

Finally, the appellant in his original brief states that there was no proof that the

appellant was not amenable to rehabilitation within the juvenile system and that the District Court could retain jurisdiction until the child reached 21. In the supplemental brief, the appellant stresses that the finding of the trial court as to the time the juvenile system had to work with the juvenile was in error but that it was given great weight.

 While it is true that 10 O.S.Supp. 1972, § 1102, expressly states that the District Court shall have jurisdiction over a child who has been declared a juvenile delinquent until the child becomes 21 years of age, this Court stated in *Purnell v. State*, Okl.Cr., 561 P.2d 109 (1977), that:

> "[A]s a practical matter and in accordance with other statutes that bestow majority rights upon a juvenile at the age of eighteen (18) years of age, as a matter of policy DISRS discharges the juvenile from further custody at that age. . ."

Therefore, we cannot say that the trial court erred in considering the statements made at the hearing that the appellant would require three to four years before he could be rehabilitated within the juvenile system. Nor can we agree that that finding was given undue weight by the trial court. *J.T.P. v. State, supra*, requires that substantial evidence support a finding that a child is not amenable to rehabilitation. In *Calhoon v. State*, Okl.Cr., 548 P.2d 1037 (1976), this Court held that substantial evidence meant more than a scintilla. Considering all the evidence presented at the certification hearing, we must hold that there was substantial evidence to support the trial court's order certifying the appellant to stand trial as an adult.

We would further like to commend the trial court for its handling of the certification hearing. In discussing with the appellant his rights, in explaining to the appellant the court's findings with regard to his certification and in carefully considering all the criteria set out in *J.T.P. v. State, supra*, the trial court preserved an excellent record from which this Court could review the decision.

The order of the Juvenile Division of the District Court, Comanche County in surrendering its jurisdiction and certifying the juvenile to the trial division of the District Court for proceedings as an adult is *AFFIRMED*, and the trial court division of the District Court is instructed to proceed with proper criminal proceedings in the case, bearing in mind that the juvenile is entitled to a preliminary hearing or examination prior to arraignment, unless properly waived.

BUSSEY, P. J., and BLISS, J., concur.