In the Matter of S. D. S., a child under the age of eighteen (18) years of age, to wit, fourteen (14) years.

No. J–77–495.

Court of Criminal Appeals of Oklahoma.

Jan. 30, 1978.

.John Dratz, Jr., Asst. Public Defender, Juvenile Division, Tulsa County, for appellant.

Donald M. Bingham, Asst. Dist. Atty., Juvenile Division, Tulsa County, for appellee.

## OPINION

BRETT, Judge:

S.D.S., a juvenile, appeals from the June 6, 1977, order of the Juvenile Division of the District Court, Tulsa County, Case No. JFJ–71222, in which District Judge Joe Jennings found that the juvenile had on or about May 19, 1977, conjointly, without consent of the owner, taken, stolen and carried away a 1972 El Camino automobile with the unlawful intent to convert it to his own use and benefit and to deprive the owner of it permanently, and adjudicated him a delinquent child under the authority of 10 O.S. 1971, § 1110, et seq. On June 13, 1977, the judge placed the juvenile in the custody of the Oklahoma Department of Institutions Social and Rehabilitative Services for an indeterminate period of time.

The juvenile's only assignment of error is that his confession was obtained in violation of 10 O.S.1971, § 1109, and was therefore improperly admitted into evidence. The version of Section 1109 in effect at the time the juvenile was questioned reads as follows:

"(a) No information gained by questioning a child shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer or investigative agency, or employee of the court, or the Department is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child, and not until the child and his parents, or

guardian, or other legal custodian shall be fully advised of their constitutional and legal rights, including the right to be represented by counsel at every stage of the proceedings, and the right to have counsel appointed by the court and paid out of the court fund if the parties are without sufficient financial means; . . ."[1]

At the time of the offense in question, the juvenile was living at Turley Children's Home, a privately funded home for deprived children, where the juvenile had been placed by the Juvenile Division of the Tulsa County District Court as a dependent neglected child. Robert Smith, the resident manager at the Turley Children's Home, was present at the questioning of the juvenile which resulted in the juvenile's confession. There was evidence to the effect that as resident manager Smith was responsible for any emergency which occurred after hours, that he assumed the duties of the superintendent of the home when the superintendent was off campus, and that he was in charge of the physical maintenance of the grounds. In regards to his authority at the home, he was described as being directly under the superintendent. He did no counseling; nor did he sponsor any clubs at the home. He attended all staff meetings and training sessions. Furthermore, he attended functions with the children and transported the children to functions away from the home and attended church with them. He also supervised their work projects. The juvenile had been counseled by two social workers at the home, and he lived in a cottage with two houseparents.

The juvenile does not allege that Robert Smith did not adequately protect his rights, but he does allege that he had no personal relationship with Robert Smith and that the two had no opportunity to confer privately prior to the juvenile's questioning. We may dispose of the contention that the two had no opportunity to confer privately by saying that neither Smith nor the juvenile asked that they be allowed to talk alone, and that when the juvenile requested permission to talk privately with the other juvenile with whom he had been picked up prior to his questioning, that request was granted. Therefore, we cannot say that the juvenile was denied an opportunity to confer with Smith.

With regard to the juvenile's contention that he did not have a "personal relationship" with Smith, this Court previously has held that the requirements of the statute were fulfilled where the defendant's grandmother who had legal custody of the defendant and had raised him since he was a child was present. See, *Crook v. State,* Okl.Cr., 546 P.2d 648 (1976). In *Matter of Davidson,* Okl.Cr., 564 P.2d 266 (1977), we allowed a confession made in the presence of defendant's stepfather, and in *Lee v. State,* Okl.Cr., 561 P.2d 566 (1977), we allowed a confession made in the presence of the defendant's grandfather where, "the undisputed facts [were] that he was the de facto custodian of the defendant, had represented himself as the grandfather of the defendant, had called an attorney, had explained the juvenile's rights to him, had been present during the oral confession and when the defendant had signed the written statement after conferring with . . . the attorney . . . ."

■ The juvenile admits that it was proper that a person from the Turley Home be with the juvenile at his questioning, but

1. The version of the statute effective as of October 1, 1977, reads as follows:

"(a) No information gained by questioning a child nor any evidence subsequently obtained as a result of such information shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer or investigative agency, or employee of the court, or the Department is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child, and not until the child and his parents, or guardian, or other legal custodian shall be fully advised of their constitutional and legal rights, including the right to be represented by counsel at every stage of the proceedings, and the right to have counsel appointed by the court if the parties are without sufficient financial means; . . . ."

Our holding herein will not be affected by the change in the statute.

he contends that the person who was present was not the best person to be present and that this Court should read into the requirements of 10 O.S.1971, § 1109, that the adult present during the questioning have a "personal relationship" with the juvenile. We have read the transcript of the proceedings carefully and we find no indication that the juvenile's rights were abridged or that his rights were not adequately protected by the presence of Smith rather than someone else from the home. It appears from the evidence that the juvenile indicated that he adequately understood his rights and that he, after conferring with the other juvenile, approached the officer and Smith and asked to be allowed to make a statement. While in theory it would be preferrable if the "parent, guardian, attorney, or legal custodian" who is present at the questioning is a person with whom the juvenile has a close personal relationship, we think that to read such a requirement into the statute would be unrealistic, if not impossible. Many juveniles have no adult with whom they feel they have a "personal relationship," and the most this Court can do is try to ensure that a juvenile's constitutional rights are protected. Therefore, we decline to read into the statute a requirement that a juvenile have a close personal relationship with the adult who is present when the child is questioned. We shall continue to determine on a case by case basis whether the child's rights are protected and whether the adult who is present meets the requirements of the statute by being the child's de facto guardian.

For the above reasons the order in this case is *AFFIRMED.*

BUSSEY, P. J., and CORNISH, J., concur.

