**In the Matter of R. P. R. G., Appellant.**

**No. J–78–117.**

Court of Criminal Appeals of Oklahoma.

Sept. 15, 1978.

Frank Greer, Miami, for appellant.

Thomas H. May, Dist. Atty., Fred H. Demier, Asst. Dist. Atty., for appellee.

## OPINION

BRETT, Judge:

The juvenile was certified to stand trial as an adult for First Degree Murder of an elderly man. He argues the inadmissibility of his confession, some irregularity in being brought before a magistrate, and failure to prove that he is not amenable to rehabilitation under the juvenile system.

■ First, the juvenile alleges that there was no probable cause for his arrest. We disagree. At the time the juvenile was picked up there is no question that the crime had occurred, probably sometime during the night before the body was found. At approximately 1:00 a. m. of that day the Chief of Police of Picher, Oklahoma, had seen the juvenile and his co-defendant on a motorcycle heading north towards the area where the body was found. They were carrying what appeared to him to be a six-pack of Miller's beer. They were gone for approximately 20 minutes. When the body was found, in a burned pickup with camper, there were unusual motorcycle tracks nearby, which matched the treads on the motorcycle ridden by the juvenile. There also were six empty Miller's beer bottles strewn about. Furthermore, the clerk in the store where the beer had been bought told the investigating officers that the juvenile and his co-defendant had purchased a six-pack of Miller's beer at about the time the police chief saw them. Furthermore, the juvenile and his co-defendant's hands and arms were "immaculate," as though they had been shaven or the hair on them had been singed and then cleaned off. We think this evidence was sufficient for the arrest.

■ Next, the juvenile contends that he was psychologically coerced into confessing by continued questioning by OSBI officers after he indicated a desire to go to Eastern State Hospital. The only testimony regarding his request to enter Eastern State Hospital is that the juvenile wanted to stay somewhere other than at the county jail, not that he was requesting the questioning to stop so he could be taken to the hospital.

■ The juvenile also contends that his confession is inadmissible because both parents were not present at the time it was made. His mother and sister were there, but his father was home sick. Title 10 O.S.1971, § 1109(a), says, "No information gained by questioning a child nor any evidence subsequently obtained as a result of such information shall be admissible . . unless the questioning . . . is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child, . . . ." and we agree that it would have been error for investigating officers to have refused to allow both parents to be present if they had desired, but we do not think the law requires that in all cases both parents be present. What the law does require is that a parent or one acting in loco parentis be available to advise the juvenile. This Court has upheld having a stepfather (*Matter of Davidson,* Okl.Cr., 564 P.2d 266 [1977]), a stepgrandfather (*Lee v. State,* Okl.Cr., 561 P.2d 566 [1977]), and a grandmother (*Crook v. State,* Okl.Cr., 546 P.2d 648 [1976]) present. Here, there is no evidence that the child's father was prohibited from attending the questioning, and there is no evidence that he was harmed by having his mother and sister there rather than his father and mother.

■ The juvenile further contends that because he has an I.Q. of 83 and because he has been deemed by psychologists and psychiatrists to have an antisocial personality and to be drug dependent, he could not have understood his rights sufficiently to waive them. The psychiatrist and psychologist who testified at the juvenile's certification hearing testified that an I.Q. of 83, while below average, was not so far below average that he would not have understood. The juvenile puts on no evidence to indicate

that he in fact did not understand. Therefore, we do not think the trial judge erred in admitting the confession for that reason.

▮ Finally with regard to the confession, the juvenile argues that because he had been previously adjudicated a juvenile delinquent, the juvenile court had been put in a position of parens patriae and, therefore, should have been present at the time the child was questioned and should have retained a lawyer for him. Obviously, declaring a child a juvenile delinquent is not the same as terminating a child's parental rights and vesting parental rights in the juvenile court.

▮ Our decision with regard to the admissibility of the juvenile's confession for purposes of the certification hearing is based on the fact that the juvenile has not indicated by more than bald assertions that the confession was coerced or otherwise inadmissible. Our decision has no bearing on what the proper decision on a motion to suppress the confession in the juvenile's trial as an adult on this charge would be. If a motion to suppress is filed, that decision should be made on the basis of evidence presented at the hearing on the admissibility of the confession.

▮ The juvenile also alleges two errors in taking him before the magistrate. Sometime around 4:30 or 5:00 p. m. on September 6, 1977, officers discovered that the juvenile was under 18, and he was not brought before a judge until the next day after he was further questioned in the presence of his mother and sister. Title 10 O.S.Supp.1977, § 1107 A, states in part that if a child who has been taken into custody is not released to his parents he "shall be taken immediately before a judge of the district court in the county in which the child is sought to be detained, or to the place of detention or shelter designated by the court." While the juvenile was not taken to a judge until the next day, as soon as the officers discovered that he was under age he was taken to the juvenile section of the County jail. He was treated within the requirements of the statute. The juvenile further alleges that when he was brought before a judge, he was brought before a special judge, which under the provisions of 20 O.S.1971, § 123 B, was improper. That statute states that a special judge may serve as a referee in cases on the juvenile docket with the approval of the judge regularly assigned to the juvenile docket and the chief judge of the District Court. However, Section 1107 only requires that a juvenile be taken before "a judge." Furthermore, the proceedings of a juvenile detention hearing are in our opinion quasi criminal, and as such a special judge may hear them under the provisions of 20 O.S.1971, § 123 A, ¶ 6.

▮ Finally, the juvenile argues that there was no evidence to show his lack of amenability to rehabilitation. We need only say that the circumstances of the crime, i. e., a beating and burning death of a human being, his previous adjudications as a delinquent, his admission that he had previously tried to kill his girl friend, and his diagnosis as an antisocial personality type were more than enough evidence for the judge to determine that he was not amenable to rehabilitation.

For the above and foregoing reasons, the certification of the juvenile to stand trial as an adult is *AFFIRMED*.

BUSSEY, P. J., and CORNISH, J., concur.