732 P.2d 908 (1987)
C.J.W., Appellant,
v.
The STATE of Oklahoma, Appellee.
No. J-86-476.
Court of Criminal Appeals of Oklahoma.
February 13, 1987.
E. Alvin Schay, Appellate Public Defender, Norman, for appellant.
Cathy Stocker, Garfield County Dist. Atty., Karen Cline, Asst. Dist. Atty., Enid, for appellee.

*909 OPINION
PARKS, Judge:
Appellant, C.J.W., a juvenile of the age of sixteen, having been born February 10, 1970, was certified to stand trial as an adult for First Degree Murder (21 O.S. 1981, § 701.7), in Case No. JUV-86-2, in Garfield County District Court before the Honorable Glenn Adams. On appeal, we affirm.
A juvenile may be certified to stand trial as an adult upon two findings by a juvenile judge: First, that there is prosecutive merit to the complaint, that is, a finding that a crime has been committed and probable cause to believe the accused juvenile committed it; and second, that the juvenile is not amenable to rehabilitation within the existing juvenile system. In re E.O., 703 P.2d 192, 193 (Okl.Cr. 1985). The appellant challenges both findings.
In his first assignment of error, appellant claims that there was insufficient evidence to make a finding of prosecutive merit, because testimony concerning his confession should have been suppressed on the ground that the confession was obtained in violation of 10 O.S.Supp. 1985, § 1109(a). Section 1109(a) states in relevant part:
No information gained by questioning a child ... shall be admissible into evidence against the child unless the questioning ... is done in the presence of the parents, guardian, attorney, or legal custodian of the child. No such questioning shall commence until the child and his parents, or guardian, or other legal custodian have been fully advised of the constitutional and legal rights of the child... .
*910 We agree with the appellant that Section 1109(a) creates an automatic and mandatory rule that both the juvenile and his parent or other legal custodian must be fully advised of the juvenile's constitutional and legal rights, and that the parent or other legal custodian must be present during any questioning to advise the juvenile. In re R.P.R.G., 584 P.2d 239, 241 (Okl.Cr. 1978); J.T.P. v. State, 544 P.2d 1270, 1277 (Okl.Cr. 1975).
In the instant case, the record indicates that Detective Tim Goodpasture advised the appellant and his father of their Miranda rights prior to any questioning. C.J.W. signed a rights waiver card in the presence of his father, who signed the same card as a witness. Appellant's father was present to advise the appellant during questioning. According to Detective Dennis Madison, C.J.W. responded that he understood his rights, that he wished to talk to the officers, and that he participated in the killing of a fourteen-year-old girl. On the basis of the foregoing, we hold that not only were the dictates of Section 1109(a) strictly complied with, but that the State has shown a knowing and intelligent waiver of appellant's right to counsel and his right to remain silent. See A.R.T. v. State, 612 P.2d 1366, 1368 (Okl.Cr. 1980); J.A.M. v. State, 598 P.2d 1207, 1209 (Okl.Cr. 1979); C.G.H. v. State, 580 P.2d 523, 526 (Okl.Cr. 1978).
We also reject the bald assertions made by appellant that he and his father did not clearly understand their Miranda rights. In re R.P.R.G., 584 P.2d 239, 241-42 (Okl. Cr. 1978). Indeed, appellant himself concedes that he scored better than seventy-seven percent (77%) of his peers on a reading test. Moreover, our decision has no bearing on what the proper decision would be if a motion to suppress the confession is filed in the juvenile's trial as an adult, because that decision must be made on the basis of evidence presented at the admissibility hearing. Id. at 242. Thus, insofar as we have found that the confession was properly admitted for purposes of the prosecutive merit hearing, this assignment of error is without merit.
In his second assignment of error, appellant argues that the trial court erred in finding that he was not amenable to treatment within the juvenile system. He first asserts that the juvenile judge relied on inappropriate standards. Our examination of the record indicates that the juvenile judge properly based his decision on the six factors set forth in 10 O.S. 1981, § 1112(b). The following evidence was presented at the amenability hearing. Carmen Buller, a social worker employed with DHS, stated that C.J.W.'s prognosis for rehabilitation was poor because his passive-agressive personality indicated that he would be easily led by someone more aggressive than himself and there was not sufficient time for meaningful treatment within the juvenile system. Norris Sontag, a psychologist, determined that C.J.W. fell within the normal range of intelligence, that he was a very good reader, but that he had character disorders which would take six to seven years to change. Dr. Cecil Burns, a clinical psychologist, said that C.J.W. could be a suicidal threat, and that he suffered from a personality disorder which would require long term, very difficult, and usually unsuccessful treatment procedures. Burns testified that under ideal treatment procedures, which were not currently available, C.J.W. might have a 50-50 chance of making major personality changes over a ten-year period. Although Burns believed that the potential for rehabilitation of C.J.W. within the juvenile system was very small, but possible, he believed that the potential for independent homicidal action by C.J.W. was remote.
Karen Martin, a counselor at Emerson Junior High School in Enid, testified on behalf of the appellant. She said that C.J.W. had never been in trouble during the past two years, that he was respectful to teachers, but that he needed guidance and structure. Nancy Mize, a Ph.D. psychologist and director of programs at the Lloyd Rader Intensive Treatment Center *911 (ITC) in Sand Springs, testified that out of five juveniles involved in murder who were treated at the facility, none of them subsequently committed crimes against persons. In her opinion the chances were better than 50-50 that the ITC program which is a part of a maximum security unit, could make a difference in C.J.W.'s behavior in less than three years. Three relatives of the appellant testified that C.J.W. had never exhibited violent or aggressive behavior.
We cannot say that the juvenile judge erred in adopting the definition of rehabilitation given by Dr. Burns, which was whether C.J.W. could be trusted not to harm others when released. The record shows that the juvenile judge properly rested his ultimate decision on the likelihood of "reasonable" rehabilitation under 10 O.S. 1981, § 1112(b)(5). The finding that the appellant was not amenable to rehabilitation was supported by substantial evidence, and we have found no abuse of discretion. See K.C.H. v. State, 674 P.2d 551, 552 (Okl.Cr. 1984); A.R.T. v. State, 612 P.2d 1366, 1369 (Okl.Cr. 1980); In re Smith, 548 P.2d 647, 649 (Okl.Cr. 1976).
Lastly, appellant contends that the juvenile judge exhibited bias against DHS, and inferentially against Dr. Mize, when he asked her if she could guarantee that if C.J.W. was found amenable he would be placed by DHS at the ITC unit in Sand Springs, which Dr. Mize said would be the most secure facility available. The record shows that no objection was made, nor was a motion for disqualification filed. Nevertheless, we fail to see how the question indicated bias as it merely showed that the juvenile judge was legitimately concerned with the factors of adequate protection for the public and possible placements for C.J.W. The record demonstrates that the appellant received a fair and impartial hearing on the merits without prejudice. See T.R.M. v. State, 596 P.2d 902, 905 (Okl.Cr. 1979). See also Okla. Const. art. II, § 6. This assignment of error is without merit.
Accordingly, the order of the juvenile court certifying the appellant to be tried as an adult is AFFIRMED.