*Nuckols v. State,* 690 P.2d 463, 470 (Okl.Cr. 1984). In this case, the photographs were not gruesome, and they were used primarily to explain the testimony of the medical examiner. We find no abuse of discretion in the admission of these exhibits.

### III.

March 3, 1987.

**S.R.L., Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. J–86–478.**

Court of Criminal Appeals of Oklahoma.

March 8, 1987.

Patti Palmer, Appellate Public Defender, Norman, for appellant.

Cathy Stocker, Dist. Atty., Dist. Four, Karen Cline, Asst. Dist. Atty., Enid, for appellee.

## OPINION

BUSSEY, Judge:

In the District Court of Garfield County, S.R.L., a juvenile, was certified to stand trial as an adult for the offense of Murder in the First Degree.

According to statements given by S.R.L. and his accomplice, C.J.W., to the police, Amber Rae Matlock was killed by the acts of one or both of them on January 8, 1986, in Enid, Oklahoma. On January 12 and 13, 1986, petitioner was fourteen years of age and he, in the presence of his mother and upon advice and waiver of his legal and constitutional rights, agreed to speak with law enforcement officers investigating Matlock's death. Petitioner also gave his own body samples for scientific testing. His mother consented to a search by the police of her house and garage. In each instance incriminating evidence was revealed which was considered by the court in the Prosecutive Merit Hearing.

I

As petitioner's first assignment of error, he urges that the court erred in not requiring the prosecution to prove by clear and convincing evidence that the consent to search S.R.L.'s body and his mother's consent to search her home were voluntarily given. He claims that neither he nor his mother knew that they could decline these searches. He further argues that his youthfulness, his mother's lack of education beyond the eighth grade, and the fact that each of them gave their consent at eleven o'clock at night after an interview lasting one hour and twenty minutes, militate against a finding of voluntariness.

The voluntariness of a consent to search is to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Lumpkin v. State*, 683 P.2d 985 (Okl.Cr.1984); and, *Holbird v. State*, 650 P.2d 66 (Okl.Cr.1982). In the present case, S.R.L. and his mother were read the *Miranda*[1] explanation of rights as they looked on a Rights Acknowledgment form. They each subsequently signed this form. They were advised that S.R.L. could not be questioned without his mother being present. A tape recording was made of

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.    1602, 16 L.Ed.2d 694 (1966).

their conversation with the investigating officers.

When requested to submit samples of his head and pubic hair, petitioner responded affirmatively without reservation. He removed his pubic hair for the officers. The officers asked if they could search their house and garage, and the petitioner's mother replied "Sure." Both S.R.L. and his mother signed a Search Waiver at that time. This waiver recited the fact that they knew they had the right to decline the search but wished to waive it. Although the State need not demonstrate that one consenting to a search knew he or she could decline, this knowledge is one circumstance to be considered in judging voluntariness. *Schneckloth, supra,* and *Holbird, supra.*

As a juvenile, S.R.L. was given tests for intelligence and achievement. He proved to be of average intelligence, and to have good reading skills. His mother also appeared to be of at least average intelligence. Additionally S.R.L. had previous experiences with law enforcement and was not completely ignorant of his rights prior to being interviewed.

■ Upon our review of the tape recorded interview and of all the circumstances surrounding the giving of consent for the searches in question, we find the district court did not err in determining that it was freely and voluntarily given.

## II

Petitioner's next assignment is that the trial court erred in admitting statements S.R.L. gave to police officers the day following the search of his home and garage because there is no clear indication that his mother understood his rights and made a knowing and intelligent waiver. The Rights Acknowledgement forms were signed by both, but the mother signed as a witness.

■ The officers who read petitioner's rights stated that S.R.L.'s mother appeared to read along with S.R.L. the Rights Acknowledgement forms and gave no indication that she did not understand it. Section 1109(A) of Title 10, Oklahoma Statutes Supp., 1986, prevents the questioning of a juvenile unless the parent or guardian is present and they are both advised of the child's legal and constitutional rights. This statute creates a mandatory rule and literal compliance is sufficient unless there is evidence that either or both did not understand the rights. *DeVooght v. State,* 722 P.2d 705 (Okl.Cr.1986); *R.P.R.G. v. State,* 584 P.2d 239 (Okl.Cr.1978); *C.G.H. v. State,* 580 P.2d 523 (Okl.Cr.1978); and, *J.T.P. v. State,* 544 P.2d 1270 (Okl.Cr.1975).

■ Whenever law enforcement officers wished to question S.R.L., they read to S.R.L. and his mother his rights as they followed along on a Rights Acknowledgement form. This procedure was used each time questioning occurred even though previously done the same day. S.R.L.'s mother participated in the interviews, asking questions herself. At one point S.R.L. made the following statement: "I could just keep quiet for all your rights say, but I don't want to." During cross-examination, S.R.L.'s mother stated she did understand what each of the *Miranda* Rights meant. We find the evidence is sufficient to show compliance with Section 1109(A) and that both S.R.L. and his mother understood their rights and that S.R.L. knowingly and intelligently waived them.

## III

■ Finally, petitioner contends that his confession was not voluntarily given, but rather the result of a coercive interview. We acknowledge that there are serious issues to be resolved concerning the statements of the officers to S.R.L. during the session in which he confessed. However, we need not pass on these issues at this juncture since we find sufficient evidence apart from his confession which establishes the prosecutive merit of the complaint. *Bias v. State,* 561 P.2d 523 (Okl.Cr.1977), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300. There was a great deal of both direct and circumstantial evidence offered to prove that a crime was committed and that there is probable cause to believe S.R.L. was a perpetrator. "The prosecutive merit hearing is in the nature of a

summary proceeding and it is not the purpose of such a hearing to establish the guilt of the juvenile, rather, that function is reserved for subsequent proceedings." *Reynolds v. State,* 575 P.2d 628, 635 (Okl. Cr.1978).

Having found sufficient evidence in support of prosecutive merit and nonamenability, we AFFIRM the Order of the District Court certifying S.R.L. to stand trial as an adult.

BRETT, P.J., and PARKS, J., concur.