**J.D.L., JR., Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. J–88–1061.**

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1989.

---

Jamie D. Pybas, Asst. Appellate Public Defender, Norman, for appellant.

W.A. Drew Edmondson, Dist. Atty., Muskogee, for appellee.

## OPINION

LUMPKIN, Judge:

J.D.L., Jr., the fourteen year old Appellant, has appealed a determination by the District Court of Muskogee County that he be certified to stand trial as an adult charged with the crimes of First Degree Murder and First Degree Burglary. That certification was based upon a finding that there was prosecutive merit to the crimes charged and that this juvenile was not amenable to rehabilitation within the juvenile system.

Evidence presented at the prosecutive merit hearing and the certification hearing revealed that on September 5, 1988, Mrs.

Theresa Timmons was found by officers of the Muskogee Police Department in her home, dead due to massive blunt injuries to the head. Mrs. Timmons had phoned the police earlier in the day concerning an intruder she had confronted in her house. She informed police that a young black male had been to her house two times earlier that day. She had seen him through the peep hole in her front door, but did not answer the door when he rang the bell. Approximately twenty minutes after the young man's second appearance she heard a loud noise upstairs. Investigating the source of the noise, Mrs. Timmons encountered a young black male coming down the stairs who then exited the house through a sliding glass door. Mrs. Timmons told police that it was the same person who had previously come to her door. When relatives could not reach Mrs. Timmons by phone later that evening the police were dispatched to her residence. The interior of the house showed signs of a struggle and Mrs. Timmons was found on the floor of her kitchen with extensive wounds to the head and multiple abrasions to the rest of her body. In a series of statements to police, Appellant admitted to being at Mrs. Timmons home and ringing the front doorbell several times. Receiving no response, he walked around to the back, climbed over a fence and entered the back yard. Finding a ladder in the carport, he placed it against the house and climbed to the second floor where he pushed in an air conditioning window unit and entered the house. As he started down the stairs, he met Mrs. Timmons so he ran out the back door. Appellant further stated that he ran to his grandfather's house where he changed clothes and returned to Mrs. Timmons house approximately twenty minutes later to see if she could identify him. When she came to the door, Mrs. Timmons recognized him instantly as having just been in her house. Appellant said that Mrs. Timmons stabbed him in the finger with a sharp instrument and then ran upstairs. He chased her through the house with Mrs. Timmons falling over the coffee table and hitting her head. Recovering, she went into the kitchen where she fell near the refrigerator. An electric sander on top of the refrigerator fell and hit her on the head. Appellant said he then picked up the sander and hit Mrs. Timmons a number of times.

In his first assignment of error, Appellant challenges the admission of his confession claiming that it was not a voluntary statement made after a knowing and intelligent waiver of rights. Both the State and the Appellant correctly state that the privilege against self-incrimination applies in juvenile cases. *In re Gault*, 387 U.S. 1, 22, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527, 543 (1967). That right is further extended by 10 O.S. 1981, § 1109(a) with the requirement that the juvenile's rights be explained in the presence of a parent, guardian, attorney or legal custodian. This statute creates a mandatory rule and literal compliance is sufficient unless there is evidence that either or both did not understand the rights. *S.R.L. v. State*, 733 P.2d 885, 887 (Okl.Cr.1987).

The record of the prosecutive merit hearing reflects that Mrs. Lewis brought her son to the attention of the police after hearing a description of Mrs. Timmons' assailant and being unable to account for the whereabouts of Appellant during that time period. Detective Grayson testified that Appellant was taken to the police station where he was given the *Miranda* warning in the presence of his mother. Sergeant Whyman read the *Miranda* warning from a prepared sheet and paused after each question to ask if the Appellant and his mother understood. Once completed, the form was signed by the parties. (PM Tr. 21–23, 39) Information from the Appellant caused the officers to return with Appellant and his mother to Appellant's residence to retrieve items of evidence. Appellant was subsequently placed under arrest and returned to the police station. Appellant was read the *Miranda* warning a second time in the presence of both his mother and father. (PM Tr. 30) Detective Grayson testified that he asked the Appellant and both his parents if they understood the rights that had been read to them. All parties indicated that they understood.

Mr. and Mrs. Lewis also indicated that they thought that Appellant had understood his rights. (PM Tr. 30–31) Appellant admitted to his participation in the offense after the second set of warnings was given.

 Appellant argues that he did not knowingly waive his rights because he was not able to confer with his parents alone and have them explain the rights to him and because he was not adequately warned that he could be tried as an adult. No request by Appellant or his parents for privacy is reflected in the record. *See Devooght v. State*, 722 P.2d 705, 710 (Okl.Cr. 1986). Further, this Court has held that warning of possible adult prosecution is not a constitutional requirement. *Matter of V.W.B.*, 665 P.2d 1222, 1223 (Okl.Cr.1983). When the State can show that both the juvenile and parent intelligently received knowledge of their rights and knowing these rights, waived them, the results of the interrogation will be admissible at a subsequent hearing to certify the juvenile. *J.A.M. v. State*, 598 P.2d 1207, 1209 (Okl. Cr.1979). We find the evidence is sufficient to show compliance with Section 1109(a) and that both Appellant and his parents understood their rights and that Appellant knowingly and intelligently waived them.

Appellant also contends that his confession was the result of a coercive interview. This allegation is not supported by the record. However, this determination is limited to the admissibility of the confession at the prosecutive merit hearing. The voluntariness of the statement may be determined during the juvenile's trial as an adult, after a motion to supress the confession has been filed and evidence presented specifically addressing the admissibility of the confession. *See C.J.W. v. State*, 732 P.2d 908, 910 (Okl.Cr.1987). Accordingly, this assignment of error is denied.

Appellant contends in his second assignment of error that the trial court improperly admitted into evidence prejudicial photographs having no probative value or relevance to the proceedings before the court. The record reflects that three photographs were admitted into evidence during the pro-secutive merit hearing. State's Exhibits Numbers 1 and 2, photographs of an electric drill and an electric sander, respectively, discovered at the scene, were admitted without objection by the defense. State's Exhibit Number 3, a photograph of the victim as discovered at the scene, was admitted over defense objections. These three photographs as well as approximately twenty other photographs depicting various aspects of the crime scene, possible murder weapons and the victim were admitted into evidence during the Certification Hearing, over objections by the defense.

Whether to admit or exclude photographic evidence is within the sound discretion of the trial judge. *Standridge v. State*, 701 P.2d 761, 765 (Okl.Cr.1985). Photographs are admissible if they tend to "make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." 12 O.S. 1981, § 2401. *See Jones v. State*, 738 P.2d 525, 528 (Okl.Cr. 1987). Even when relevant, however, photos may be excluded if the trial judge determines that their "probative value is substantially outweighed by the danger of unfair prejudice ..." 12 O.S. 1981, § 2403.

██ Title 10 O.S. 1981, § 1112(b) sets forth specific criteria to be considered in determining whether to certify the juvenile to stand trial as an adult. Those criteria include whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner, whether the offense was against persons or property, and whether personal injury resulted. Photographs of the victim illustrating the various wounds received tended to prove that the crime was against a person wherein serious, fatal injury resulted. The photographs of the crime scene illustrating blood splatters throughout several rooms of the house and the general disarray of the house, and the photographs of the possible murder weapons were probative of the violent and premeditated manner in which the crime was committed. Appellant also argues that the photographs were prejudicial because neither the death of

Mrs. Timmons, the location or extent of her injuries or the cause of her death was disputed. However, our review of the record reveals that only the death of Mrs. Timmons was not contested by the defense. In Appellant's statement to police, he said that he chased Mrs. Timmons through the house before she slipped and fell in the kitchen where the sander fell and hit her on the head. Then Appellant picked up the sander and used it to hit Mrs. Timmons. This version of events is inconsistent with the weapons found at the scene and the number and severity of wounds suffered by the victim. We find the photographs relevant to the determination of two of the six statutory criteria. Further, we reject Appellant's argument that the photographs prejudiced him in the eyes of the trial court by focusing on the nature of the crime rather than the prospects for rehabilitation within the juvenile system. Initially, Appellant has failed to cite proper authority to support his argument as the authority relied upon by Appellant addresses the effect of potentially prejudicial photographs upon a jury. The risk that a jury may be inflamed upon viewing certain photographs is certainly greater than any risk involved from a judge viewing the photographs. Further, Appellant's contention of bias against rehabilitation is not supported by the record. Admission of the photographs merely showed a legitimate concern with the severity of the offense. The record clearly demonstrates that Appellant received a fair and impartial hearing on the merits of the case without prejudice. *See* C.J.W. v. State, 732 P.2d 908, 911 (Okl.Cr. 1987).

Appellant next alleges error in the trial court's granting the State's Motion to Produce the psychological reports and test results of Dr. King. The record reveals that the defense petitioned the court for funds to secure the services of an independent psychologist to examine Appellant. The request was granted pursuant to the court's order for the defense to retain an independent psychologist to "examine Defendant, prepare psychological reports, and testify at the certification hearing." (O.R. 61) The State subsequently filed a motion

for the defense to produce the report prepared by Dr. King and the data upon which she based her conclusions.

We agree that the trial court erred in permitting pre-trial discovery of these records by the State as no statutory authority existed for such discovery. *Mills v. Tulsa County District Court*, 770 P.2d 900, 901 (Okl.Cr.1989). Acknowledging that the trial court did not have the benefit of the above recent decision, we find this error did not prejudice Appellant as the information contained in the records was ultimately to be disclosed to the State pursuant to 12 O.S. 1981, § 2705. Section 2705 provides that a testifying expert witness may be required to disclose the underlying facts or data on which he relies upon cross-examination. When Dr. King testified during the certification hearing to her opinion of the Appellant's prospects for rehabilitation in the juvenile system, the state then became entitled to examine any records used by Dr. King in forming her opinion. Therefore, we refuse to reverse upon this allegation of error.

In his final assignment of error, Appellant contends the trial court erred in certifying him to stand trial as an adult as the State failed to prove by substantial evidence that he was not amenable to rehabilitation within the juvenile system. Evidence presented at the Certification Hearing revealed that the State met its burden of proof. Dr. Herman Jones, a psychologist who examined Appellant at the request of Court Related Community Services testified that Appellant had rehabilitation potential but it would take an extraordinary committment by the juvenile justice system. Dr. Jones stated that Appellant "was not an individual for who you go through the usual kind of procedures and spontaneously recover or improve." (Tr. 49) He testified that Appellant had an IQ in the dull to normal range with no learning disabilities or psychotic disorders. Appellant had internalized a negative set of values, placing more credibility in his peers at the expense of the adults attempting to espouse a positive code of values. Dr. Jones further stated that Appellant was not im-

pulsive and he thought through situations before acting. Appellant was suffering from mild chronic depression, and this acted as a trigger in negative situations making Appellant more aggressive and violent. Dr. Jones minimized the immediate impact of treatment in the juvenile system and stated that any treatment plan would require full participation by Appellant and close supervision of his conduct. Joyce Day, Juvenile Probation and Parole Counselor who conducted the certification study, testified to Appellant's previous contacts with the juvenile justice system; an August 1987 referral for attempted burglary of a meat market, two referrals in May 1988, one by Appellant's mother for difficulties at home and one by the police department for shoplifting, and an August 1988 referral for shoplifting. Ms. Day stated that this was a difficult case but based upon the six statutory criteria, she felt that the Appellant was not amenable to treatment in the juvenile system. Ron Copeland, District Supervisor for Court Related Community Services, also testified that Appellant presented a difficult case, but doubted that Appellant was treatable within the juvenile system. The defense presented the testimony of Joyce Coursey, Detention Officer with Oklahoma County Juvenile Bureau who testified that Appellant had been cooperative during his stay at the center. She stated that Appellant was not a troublemaker, but she was unaware of a report produced on cross-examination showing that Appellant had been written up twice for "inciting" others. Edith King, Director of Pychology and Forensic Science for Oklahoma County Department of Mental Health, evaluated the Appellant and testified that Appellant was treatable within the juvenile system. The defense also presented the Vice–Principal and the football coach of West Junior High School, and a former church member who each testified that Appellant was cooperative and non-violent.

The finding that a juvenile is unfit for rehabilitation is a discretionary decision to be made by the judge, but the decision must be based on substantial evidence against the juvenile's claim to the benefit of juvenile treatment. *In re E.O.*, 703 P.2d 192, 193 (Okl.Cr.1985). In *C.J.W. v. State*, 732 P.2d 908, 911 (Okl.Cr.1986), we held that the juvenile judge properly rested his decision to certify the juvenile as an adult upon the likelihood of "reasonable" rehabilitation under 10 O.S. 1981, § 1112(b)(5). *See also Matter of M.E.*, 584 P.2d 1340, 1347 (Okl.Cr.1978). Noting the absence of controls by the court over the conditions enumerated for treatment, and the lack of available programs within the Department of Human Services, the judge in the instant case found that the treatment plan specified by Dr. Jones and agreed upon by Dr. King "asks too much of the juvenile justice system". (Tr. 456) When all the evidence concerning rehabilitation is considered we cannot say that the trial court abused its discretion in finding the Appellant was not amenable to rehabilitation in the juvenile system. *See K.C.H. v. State*, 674 P.2d 551, 552 (Okl.Cr.1984); *J.A.M. v. State*, 598 P.2d 1207, 1210 (Okl.Cr.1979). Accordingly, the order of the juvenile court certifying Appellant to be tried as an adult is AFFIRMED.

PARKS, P.J., LANE, V.P.J., and BRETT, J., concur.