v.

The STATE of Oklahoma, Appellee.

No. J–87–106.

Court of Criminal Appeals of Oklahoma.

July 13, 1987.

Rick Ault, Asst. Public Defender, Juvenile Div., Oklahoma City, for appellant.

Robert H. Macy, Dist. Atty., Oklahoma County, Fern L. Smith, Asst. Dist. Atty., for appellee.

## OPINION

BRETT, Presiding Judge:

On December 16, 1986, T.C. was certified to stand trial as an adult for the offense of Murder in the First Degree in the District Court of Oklahoma County, Case No. JF–86–1438. This Court stayed the trial until the appeal from the certification could be heard.

Evidence at the prosecutive merit hearing showed that when T.C. was thirteen years old, he and a sixteen-year-old girlfriend broke into George Curlee's house with the intent to rob him. Mr. Curlee was asleep when they first entered but awoke while they were still there. As Curlee attempted to grab the girl, T.C. began hitting him with a board. At least part of the time the girl held Mr. Curlee down while T.C. severely beat Mr. Curlee. In addition to sustaining multiple injuries to the skull and brain, Mr. Curlee had twelve fractured ribs, a fractured sternum, two broken wrists, and a broken ankle. He died as a result of these injuries.

The first assignment of error alleges that the trial court erred in overruling the juvenile's motion to suppress any statements made by the juvenile to the police. This assertion is based on 10 O.S. 1981, § 1109(a), which prohibits the use of

information or evidence against the child gained by questioning the child unless the questioning is done in the presence of the parents, guardian, attorney, or legal custodian of the child. The child and one of the above-mentioned adults must be advised of the child's constitutional and legal rights before questioning commences. Also, the juvenile must knowingly and intelligently waive his right to counsel and his right to remain silent in order for the evidence obtained to be admissible. *C.G.H. v. State*, 580 P.2d 523 (Okl.Cr.1978).

■ On appeal, the juvenile admits that his mother was present during all relevant conversations he had with the police detectives. As for the second requirement, that the juvenile and his parent be advised of the juvenile's rights, the detective testified that the rights were given in full. T.C. and his mother testified that after T.C. was advised of his right to remain silent, there was some noise outside the door and the detective did not finish reading the rights. On cross-examination, however, T.C. admitted that he was told he had a right to have a lawyer present.

Thus, the only real question is whether T.C. knowingly and intelligently waived his rights. Among the factors tending to refute waiver are that T.C. was very young and of low intelligence, his mother, who only had a sixth-grade education herself, was ill-equipped to advise him, and the detectives read the rights but did not explain them.

On the other hand, both T.C. and his mother said they understood their rights. After being advised of their rights, Mrs. C. told T.C. that if he wanted to tell the detectives what he knew, that would be all right with her. T.C. said he wanted to tell.

Furthermore, this was not the first encounter T.C. and his mother had had with the police. Both executed a rights waiver form in a previous case. Additionally, T.C.

had been represented in the past by the same attorney who represented him at this trial.

Although these facts present a close case, we defer to the trial court's ruling, which is supported by the record. *See C.G.H. v. State*, 580 P.2d at 527; *see also DeVooght v. State*, 722 P.2d 705 (Okl.Cr. 1986).

The juvenile next asserts that the trial court erred in overruling his demurrer or motion to dismiss based upon 21 O.S.1981, § 152. That statute reads, in pertinent part, that:

All persons are capable of committing crimes, except those belonging to the following classes:

* * * * * *

2. Children over the age of seven (7) years but under the age of fourteen (14) years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness.

The appellant contends that, because T.C. was thirteen years old when the offense allegedly was committed, the State had the burden to prove in the prosecutive merit hearing [1] that he knew the wrongfulness of the act. The State correctly contends, however, that that issue is one for trial, rather than an issue to be considered in the determination of whether the juvenile court should retain its jurisdiction or certify the child into the adult system. This Court explained in *Sherfield v. State*, 511 P.2d 598, 601 (Okl.Cr.1973):

At the outset we note that the Juvenile Act does not specify who is "capable" of committing crimes. Who is capable of committing crimes is governed by Title 21.

Under the Juvenile Act, a juvenile or child under its auspices is not declared

---

1. We note that 10 O.S.1981, § 1112 sets forth the criteria the court must consider when deciding whether to retain jurisdiction in the juvenile division, and that one such factor is the juvenile's capability of distinguishing between right from wrong. In the case at bar there was evidence during the certification hearing—after a

determination that there was prosecutive merit—that T.C. knew right from wrong. On appeal, appellant does not allege error in this regard; he alleges only that T.C.'s ability to establish right from wrong had to be established in order to find prosecutive merit.

incapable of committing a crime. The Juvenile Act establishes a necessary procedure before such a juvenile or child may be prosecuted for a crime. It is not a matter of capacity to commit a crime, rather it is a question or [sic] jurisdiction. A juvenile above the age of fourteen is presumed to have the legal capacity to commit a crime, but no court would have jurisdiction to try such a juvenile until there had been a waiver and certification by the juvenile court. Correspondingly, even after certification by a juvenile court of a juvenile under the age of fourteen, in his criminal trial it would be incumbent upon the State to overcome the presumption of the child's incapacity established by Title 21.

■ Thus we hold that the State need not prove at a prosecutive merit hearing that a child between the age of seven and fourteen knew right from wrong; however, the State must overcome the statutory presumption of incapacity at trial. The trial court properly overruled the demurrer.

The third assignment of error—that the trial court erred in finding prosecutive merit because there was insufficient evidence—is contingent upon this Court's finding that one or both of the first two assignments of error has merit. Inasmuch as we find that both are without merit, this argument need not be addressed.

We turn now to the final assignment of error, that is, that the trial court abused its discretion in certifying the juvenile to stand trial as an adult in that there was insufficient evidence to show the juvenile was not amenable to rehabilitation within the juvenile system.

We begin with the principle that the "provision that permits the juvenile court to waive its exclusive jurisdiction and certify a child to stand trial as an adult contemplates the exceptional case in which the child is not amenable to treatment under the juvenile facilities and programs available to the court." *J.T.P. v. State*, 544 P.2d 1270, 1275 (Okl.Cr.1975). "The finding that the child is unfit for rehabilitation is a discretionary decision to be made by the judge, but the decision must be based

on substantial evidence against the child's claim to the benefit of juvenile treatment." *In re E.O.*, 703 P.2d 192, 193 (Okl.Cr.1985).

The fact that the appellant is accused of brutally beating an elderly man to death does not in and of itself answer the question of whether the appellant is amenable to rehabilitation within the juvenile system. Indeed, "there is no presumption that a child who has committed a very serious act is not receptive to rehabilitative treatment." *S.H. v. State*, 581 P.2d 916, 917 (Okl.Cr.1978). This Court has previously found that the State failed to meet its burden of showing nonamenability "by substantial evidence" in two cases where the juvenile was charged with second degree murder. *See S.H. v. State*, 581 P.2d 916; *In re G.L.W.*, 580 P.2d 998, 1002 (Okl.Cr. 1978).

In the instant case, the trial judge conceded that the "evidence in this case ... is clear that rehabilitation and successful treatment are well within the limits of accomplishment with proper application of extensive and long-term psychotherapy and over an extended duration." In fact, the testimony of the witnesses called by both the State and the defense overwhelmingly demonstrated that the appellant would be amenable to rehabilitation within the juvenile system. Moreover, the witnesses stressed that because the appellant was thirteen years old, there was sufficient time to achieve rehabilitation. The record shows that the finding of nonamenability was not based on substantial evidence, but on the trial court's personal indictment of the juvenile system.

The court explained why he felt he had to certify T.C. as an adult:

But the testimony is very clear, not only from this hearing, but from that of which the Court can take judicial notice, is that the Department of Human Services is not geared for, either by inclination or fact, for long-term placement, for extended psychotherapy, for extended educational therapy, for extended security.

It's [sic] parole procedures do not receive any outside review, but are internally made. There is no noninstitutional

parole system set up for the Department of Human Services.

As a consequence, from the testimony, at least the inferences, and I believe to be in fact, that if a juvenile is placid for a reasonable length of time, rehabilitation, successful treatment is assumed.

Department affords no basis for retention to an age where rehabilitation can be reasonably assured. The testimony is that juveniles are kept, even under the most secure circumstances, nine to twelve months, seldom beyond two years, then are placed back in the community with little external control and less security measures for the public.

Court can find from the testimony no apparent distinction between what the Department of Human Services regards as treatment and separate requirement that it be concerned by public protection.

\* \* \* \* \* \*

The evidence in this case I believe is clear that rehabilitation and successful treatment are well within the limits of accomplishment with proper application of extensive and long-term psychotherapy and over an extended duration.

If that could be accomplished within the present judicial juvenile system, it can very well be argued that the public safety in the long term would be better enhanced by extended treatment within the juvenile justice system.

However, D.H.S. policy and practice in effecting parole or release solely upon quiet behavior and attendance in classes and no back talk to teachers permit juveniles to be released without any external review and without any assurance to the public that the system has done its job.

\* \* \* \* \* \*

But the law of the State of Oklahoma, as announced by the Court of Criminal Appeals and the Oklahoma Supreme Court, make it clear that this Court has no control over the disposition of these two young people if it places them in D.H.S. custody; indeed, the public has no control.

The Court regretfully believes that placement with D.H.S. in these circumstances and in this case would constitute an abandonment of judicial responsibility to assure, as the statute describes it, the prospects for adequate protection of the public as the person is processed through the juvenile system by use of procedures and facilities currently available to the Juvenile Court.

Adequate retention in juvenile system and adequate treatment of these two young people could well be in the best interest of the public in this case, but such policies or practice have not been demonstrated to this Court by the evidence or by all those rules and regulations of which the Court may take judicial notice. And there appears to be no trend to a view or a result that the Department of Human Services will accept its very real responsibilities with respect to repeated or serious offending juveniles.

And having considered all the factors, and with a great deal of reluctance, the Court finds that the motion of the State to certify [T.A.C.] as an adult should be sustained....

Tr. 150–53.

The trial court took judicial notice of D.H.S.' policy and practice from which the trial court concluded that rehabilitation could not be achieved within the existing juvenile system. Such policy and practice was not presented in the testimony before the trial court, nor does the record contain what "policy and practice" the trial court took judicial notice of. This Court has previously rejected similar attempts to discredit the juvenile system:

If we were to follow the State's argument, every juvenile accused of committing an offense which would be a criminal offense if committed by an adult, would be certified to stand trial as an adult simply because of the shortcomings of Oklahoma's juvenile system. Such a result would be in direct contravention of our juvenile statutes and the cases which have arisen out of these statutes.

*C.P. v. State*, 562 P.2d 939, 943 (Okl.Cr. 1977). Moreover, it is the province of the legislature, and not the courts, to evaluate

and review the shortcomings of the juvenile system and to make whatever changes are deemed necessary.

The overwhelming evidence established that the appellant was amenable to rehabilitation within the juvenile system. The trial court abused its discretion in rejecting this overwhelming evidence on the basis of his personal opinion that the juvenile system was not working properly. Moreover, the trial judge's reliance on evidence not before the court constituted a denial of due process. The appellant should have been afforded a fair opportunity to examine, criticize, and refute any evidence relied upon by the trial court in making its finding of nonamenability. *See In re J.S.*, 556 P.2d 641, 643 (Okl.Cr.1976) (interested parties must be afforded fair opportunity to examine, criticize and refute findings of social report admitted to support finding of nonamenability), *overruled on other grounds, In re M.W.N.*, 590 P.2d 692, 694 (Okl.Cr.1979).

For the above reasons, this case is REVERSED and REMANDED to the Juvenile Division of the District Court, Oklahoma County, with instructions to withdraw the order certifying the appellant to stand trial as an adult and with instructions to deal with the appellant in the juvenile system.

PARKS, J., concurs.

BUSSEY, J., dissents.