v.

**STATE of Oklahoma, Appellee.**

**No. J–90–26.**

Court of Criminal Appeals of Oklahoma.

April 18, 1990.

Publication Ordered Jan. 10, 1992.

Rick Ault, Asst. Public Defender, Juvenile Div., Oklahoma City, for appellant.

Robert H. Macy, Dist. Atty., Lisa K. Hammond Denwalt, Asst. Dist. Atty., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

K.L.J., appellant, was born on January 10, 1973. The charges in this case allege the crime occurred on August 16, 1989; appellant was 16 years old at that time. Appellant has been charged in Oklahoma County District Court, Case No. CRF–89–4907, with Distributing Cocaine. 63 O.S.Supp.1986, § 2–401. The appellant's motion to be certified and tried as a child was denied. 10 O.S.Supp.1989, § 1104.2.

The evidence offered at the preliminary hearing, that a crime was committed and that appellant was the person that committed it, was supplied by the testimony of the undercover officer who made the purchase and also by the police reports. The officer stated that he and two other officers were in plain clothes in an unmarked car. In addition there was a back-up surveillance vehicle that was in contact with the officers assigned to do the buying. There was no video recording of the transaction and it is unclear if there was visual surveillance by the arrest team. The purpose of the back-up vehicle was for the officers to make the arrest after the buying officer had left the immediate area. This would protect the identity of the undercover officers so they could continue to make purchases.

The officer testified that he approached a youth standing outside an apartment complex where the police knew drugs were frequently traded. He asked the youth to sell him "a $25.00 rock, [of] crack cocaine" which the boy did. After the buy the officer returned to his car and radioed the following description to the arresting offi-

cers: a black male about five-five, 16 to 18 years old, about 130 pounds, short curly hair, white t-shirt, white shorts, and black tennis shoes, mustache, he had a radio with him. There is no written record of the description given to the arresting officers and the arrest record shows that appellant was wearing blue shoes when he was booked. The serial numbers on the money used by the officer to make the purchase were recorded. However, when appellant was arrested "two to three minutes" later, which was as soon as the description was relayed by the officer who made the buy to the arresting officers, the $25.00 was not on appellant. The other two officers in the car with the officer who made the arrest could not identify the seller because they were too far away. The arresting officers took a picture of appellant at the time of the arrest and then showed that picture to the officer who had made the purchase to complete the identification. The officer who had made the buy was out of sight some distance away. On the basis of the single photo, the officer confirmed the identity of appellant as the person who sold him the crack.

The examining magistrate ultimately found sufficient evidence to bind appellant over for trial. Neither appellant nor the State finds fault with this, nor do we considering the function of a preliminary hearing. *See* 22 O.S.1981, §§ 262, 264; *Jones v. State*, 660 P.2d 634 (Okl.Cr.1983).

Appellant's motions to dismiss the charges or in the alternative to be certified to stand trial as a child were considered. Appellant's proof was comprised of appellant's mother's testimony and the testimony of Roger Creecy an employee of the Department of Human Services. In addition, a copy of the Reverse Certification Study and a Psychological Evaluation by Dr. Herman Jones were admitted on stipulation. Both documents had been prepared pursuant to court order.

Appellant has no prior convictions or charges on his record, although he was arrested in April of 1989 when a car he was riding in was stopped. He was arrested for Possession of Marijuana with Intent to Distribute, Unauthorized Use of a Motor Vehicle and Possession of an Incendiary Device. No charges were filed and it was eventually dropped. Appellant had not been the driver of the car. He has never been under the supervision of the court or the Department of Human Services (DHS), although he dropped out of school after repeated truancy during the 1988–89 school year when he was in the ninth grade. His mother testified that he was not a problem at home although she did not know the name of the school he had been attending. He had lived with a great aunt due to his mother's incarceration for several years during his youth. After the April incident, appellant was to have counseling but his mother testified every time she called about it she was put off and finally after being told not to worry about it she dropped it.

Although the psychological evaluation shows that appellant has an IQ of 72 on a Slosson Intelligence Test, Dr. Jones commented that appellant was suffering from some depression at the time of the test that could have adversely affected his score. The doctor also reported that appellant admitted to experimentation with alcohol and the use of marijuana on an average of one to two times a week. The doctor did not indicate there was dependency on these substances and appellant denied he was dependent. The doctor's assessment of appellant's prospects for being a problem in the future were qualified. He opined that the jail time had opened "a window of amenability to traditional interventions" and that if he could be placed in "a secure residential facility followed by a placement in a post institutional group home" he had a good prognosis. He went on to state that without that kind of treatment his prospects "will be reduced."

The judge was concerned that DHS would not be able to provide this kind of treatment because they have a greater demand than they have facilities. The court wanted evidence that appellant would be placed in the kind of setting that Dr. Jones described. The judge was aware of the system that DHS uses to determine who gets into a particular program. According

to the judge, there is a point system used for triage. The court believed that the system would not attach enough points to appellant's crime to get him into the recommended program. At the Judge's request, a DHS witness was called to testify about the DHS policies. The witness said that because of the seriousness of appellant's charge and since he would be tried as an adult due to his age even though he was a first offender, he would have a high point count. The clear implication was that he had a good chance at the placement that Dr. Jones recommended. The Judge nevertheless declined to certify appellant as a child stating, "I can't send him back on the streets. And DHS won't place him to a secure setting. So I don't have any other choice but to have him stay in the adult system."

■ Appellant's first proposition of error is a claim that the legislative amendment to 10 O.S.Supp.1989, § 1104.2 has rendered at least a portion of that statute unconstitutional. The change in question provides that children 16 and 17 years old are to be tried as adults if they are charged with "manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled dangerous substance." This is so even though persons of the same age, if charged under the Trafficking in Illegal Drugs Act, 63 O.S.Supp.1987, §§ 2–414–420, a presumably more serious offense, would not be automatically considered and tried as adults.

We do not find appellant's contention to be well founded. We believe the legislature intended that all drug offenses of the general description enumerated in the amendment added to Section 1104.2, to-wit: "manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled dangerous substance, . . ." shall be included. The statute does not specify that only the offenses under the original Uniform Controlled Dangerous Substance Act shall be included in this description and certainly nothing in the Trafficking in Illegal Drugs Act precludes those offenses from being included in the description. *See* 63 O.S.Supp.1989, §§ 2–101–2–604. The citation of authority provided by appellant does not persuade this Court that there are any constitutional problems with this new amendment.

■ In appellant's second proposition he claims that the trial court abused it discretion in refusing to certify him as a child for purposes of this charge. The evidence showed that this was a first offense, that there are some weaknesses in the case against appellant and that the court ordered doctor's evaluation supported more favorably the juvenile system handling appellant's incarceration and rehabilitation. The burden of proof falls on the youth to disprove he should be treated in the adult system. *Trolinger v. State*, 736 P.2d 168 (Okl.Cr.1987).

■ Using the check list the statute has provided, the trial judge impliedly found: first, the offense, if not immediately aggressive or violent, could become such with the ingestion of the drug, and the sale was wilfully entered into, even though the police officer instigated the transaction; second, if you have to classify a drug sale as either a crime against property or a crime against persons it would probably best be classified as a crime against persons; third, there had been a prior encounter with law enforcement in the form of an arrest.

The critical question was the fourth test which reads as follows: "The prospects for adequate protection of the public if the accused person is processed through the juvenile system." The judge found against the appellant since he could get no assurances from DHS that appellant would get the prescribed treatment. Considering this Court's holding in *J.L.S. v. State*, 759 P.2d 239, 240–41 (Okl.Cr.1988), in explaining that the child in *T.C. v. State*, 740 P.2d 739 (Okl.Cr.1987) received the benefit of the more lenient presumptions because he was under the age of 16 but that the protection and safety of the public will after that age prevail all doubts being resolved against the youth.

Therefore, after assessing the facts of this case and in applying the list of four criteria the statute dictates, we find that

the trial court did not abuse its discretion in finding appellant should be denied certification as a child. Although the court found that appellant was not lost yet, due however, to the inadequacies of the system, the public was not safe from him. The irony of the judge's ruling is that because appellant might not have enough points, the higher the point count the more egregious the record, to receive the placement Dr. Jones recommended, he would not be given the benefit of the flexibility that the juvenile system allows. Just as in *T.C.* the judge's complaint is with DHS not with the juvenile. *Id.* For these reasons, we AFFIRM.

LANE, V.P.J., and LUMPKIN, J., concur.

JOHNSON, J., concurs in result.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting:

In *T.C. v. State*, 740 P.2d 739 (Okl.Cr. 1987), the trial court rejected overwhelming evidence establishing that T.C. was amenable to rehabilitation within the juvenile system on the basis of the judge's personal opinion that the juvenile system was not working properly. Accordingly, this Court held that the trial court abused its discretion in refusing to certify T.C. as a child. *Id.* at 744. The majority in the present case concedes, "Just as in *T.C.* the judge's complaint is with the DHS not with the juvenile." *Majority* at 364. On this basis, I respectfully dissent. Finding that the trial court abused its discretion, I would reverse and remand this case to the trial court with instructions to deal with appellant in the juvenile system.