799 P.2d 1122 (1990)
R.J.D., Appellant,
v.
STATE of Oklahoma, Appellee.
No. J-89-862.
Court of Criminal Appeals of Oklahoma.
October 10, 1990.
Susan Bussey, Norman, John W. Coyle, Oklahoma City, for appellant.
Jan Meadows, Asst. Dist. Atty., Norman, for appellee.

OPINION
JOHNSON, Judge:
R.J.D., minor Appellant, has appealed a determination by the District Court of Cleveland County that he be certified to stand trial as an adult charged with the crime of First Degree Murder, Case No. JFJ-89-63, the Honorable Alan Couch presiding.
Appellant was charged with the crime of Murder in the First Degree pursuant to 21 O.S. § 701.7(A), and on the 18th day of April, 1989, a prosecutive merit hearing was held and the court determined merit existed. Thereafter, a Certification Hearing was conducted and the court determined *1123 that the minor should be certified to stand trial as an adult. Appellant asserts that there was insufficient evidence to make the finding of prosecutive merit due to the fact of certain inadmissible testimony in violation of appellant's Fifth and Sixth Amendment rights. As it relates to this error, some background evidence must be given.
At the merit hearing held on April 18, 1989, the McCloud Chief of Police, Wayne Heath, testified that he knew the juvenile involved and his family from birth. He stated that he was first contacted during the early morning hours of March 4, 1989, relative to a homicide at Deer Run Foods and it was indicated that the juvenile and two other individuals may have been involved. The next day on two separate occasions, the police chief went to the juvenile's residence and talked with appellant, his mother and step-father. The Miranda warning was issued to the appellant at the first discussion and the appellant denied any knowledge of the facts. Later that same day, a detective for the McCloud Police Department, Steve Lackey, indicated to the chief that the juvenile's uncle had called and that the juvenile wanted to turn himself in. When the chief approached the house, the youth's uncle handed him a 30-30 rifle and when asked "Is this the weapon?", replied "Yes".
The juvenile was then taken to the McCloud Police Station along with his mother and step-father. Bill Ware, a detective with the McCloud Police Department, testified that he was present when the juvenile, in the presence of his mother and step-father, was advised of his rights and this interview terminated when the juvenile's mother indicated that she wanted an attorney present for any formal questioning.
The youth was then taken by a detective from the Oklahoma City Police Department to Oklahoma City for interrogation. Two detectives with the Oklahoma City Police Department conducted the interview at approximately 5:00 p.m. on a Saturday afternoon. The juvenile's mother was present during the interview but prior to the interview indicated that she wanted to talk with an attorney and a telephone was made available to her for this need. The evidence indicates that a phone call was made but does not give specifics as to who was called. Also, it should be pointed out that during the interrogation of the young man, with parent present, the youth turned to his mother and said "I think we should talk to a lawyer".
Suzanne Lackey, the juvenile's aunt, testified that on the day of the interview, the juvenile's mother contacted her about obtaining a lawyer. She contacted an attorney and after talking with such attorney also contacted the Oklahoma City Police Department and talked with a sergeant at the Oklahoma City Police Department and informed the sergeant that the attorney had advised the mother and the juvenile to refrain from making any statement until he had talked with the attorney. The aunt asked that this message be related and, in addition, the aunt made a second call with the same request to the sergeant who told her at that time that he was too busy to run up and down the halls delivering messages. It is important to note that both of these phone calls occurred prior to the time that the youth was interrogated. Further, this occurred late on a Saturday afternoon when most attorneys are hard to find and are not in the habit of going to the police department to help protect the rights of clients. The message that was given to the sergeant was never relayed to the youth or parent.
In the first assignment of error, the appellant asserts that there was insufficient evidence to make a finding of persecutive merit, due to the fact that the testimony concerning the confession was a violation of the youth's Fifth and Sixth Amendment rights and without the confession there would have been no evidence that the appellant committed the crime. Appellant argues that the statement or confession was inadmissible and it was not free and voluntary. We agree.
Oklahoma by statute, as well as case law, require that prior to any questioning a youth must be fully advised of his or her *1124 constitutional and legal rights, that a parent, guardian, attorney or legal custodian of the child must be present during such interrogation, and that if the youth or family cannot afford an attorney, an attorney will be provided. 10 O.S. § 1109(A). J.A.M. v. State, 598 P.2d 1207 (Okl.Cr. 1979).
The critical question before the Court is whether the initial interrogation in McCloud when the parent, acting as such parent, attorney or advisor of the child requests an attorney, can the interrogation continue in Oklahoma City with detectives who are unaware of this request. This Court has not made a ruling heretofore as it relates to such question.
The U.S. Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) discussed the Fifth and Sixth Amendment protection as it relates to self-incrimination in statements made without counsel present. The court in a more recent decision in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), went further to formulate rules as it relates to safeguards of rights of an accused who has asked for counsel. It is our holding that by the mother asking for an attorney to be present before any additional interrogation was commenced, she satisfies the Edwards ruling.
As noted in Edwards, the second interrogation was on a subsequent day by two detective colleagues of the first interrogator. This is somewhat similar to the situation we have here. By this decision, we do not hold that there was or was not prosecutive merit. There may have been sufficient evidence outside of the confession or statement for the court to find prosecutive merit and the trial court must make this ruling based upon the opinion herein.
The question as to whether or not the statement or confession may be admitted can be raised at any time during the trial proceedings including, but not limited to, preliminary hearing, special motion or at trial. J.D.L., Jr. v. State, 782 P.2d 1387 (Okl.Cr. 1989).
The request for an attorney made on behalf of the defendant by the mother appears to be unequivocal. If there is any question as to the request or demand being clear enough, this has been answered by the U.S. Supreme Court. Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). In that case, the court was clear as to how you determine whether or not the request or statement is clear and concise. The court further adopts the "bright-line rule" stating that once the request is made, all questioning must cease after an accused requests counsel. Smith, Solem v. Stumes, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). Therefore, we hold that the statements or confession made by the defendant in this case would be inadmissible due to the fact that an attorney was not provided by defendant or the State prior to the second interrogation and the defendant did not initiate the interrogation.
In his second and third assignments of error, the juvenile contends that the State failed to show sufficient evidence that the juvenile was not amenable to rehabilitation within the juvenile system and that shortcomings in the juvenile system may not be the basis for certification. The finding that a juvenile is not amenable to rehabilitation within the juvenile system is a discretionary decision to be made by the judge, but the decision must be based on substantial evidence against the claim of the juvenile that the benefit of the juvenile system would lead to rehabilitation. J.D.L., Jr. v. State, 782 P.2d 1387, 1392 (Okl.Cr. 1989). See also, E.O. v. State, 703 P.2d 192, 193 (Okl.Cr. 1985) and C.S.M. v. State, 599 P.2d 426, 430 (Okl.Cr. 1979).
Our examination of the record of the certification hearing indicates that the judge based his decision on the six (6) factors set forth in 10 O.S. 1981, § 1112(b), after considering the testimony of the witnesses and reviewing the file. The State presented three witnesses and the defense six witnesses. Mere numbers of witnesses on one side or the other is not the criteria. In this instance, the court is the judge of the facts and the judge at that hearing must make a decision based upon the persuasiveness *1125 of the evidence and not mere numbers.
Absent an abuse of discretion, the juvenile judge, as trier of fact, has the discretion and the prerogative to assess the credibility of the witnesses and to weigh and value their testimony and opinions. Accordingly, the judge may base his decision on evidence on one side as against that of several witnesses on the other side, who testify either to the contrary or to a contrary state of facts. An "abuse of discretion" has been defined by this Court as a "clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented in support of and against the application." Stevens v. State, 94 Okl.Cr. 216, 232 P.2d 949, 959 (1951). When all the evidence concerning rehabilitation is considered, we cannot say that the trial judge abused his discretion in finding that the juvenile was not amenable to rehabilitation in the juvenile system. See K.C.H. v. State, 674 P.2d 551, 552 (Okl.Cr. 1984); J.A.M. v. State, 598 P.2d 1207, 1210 (Okl.Cr. 1979). Therefore, we affirm the findings of the court as it relates to the court's finding of non-amenability.
Accordingly, the order of the juvenile court's finding of non-amenability is AFFIRMED but the case is REVERSED and REMANDED for the reasons as set forth herein as it relates to a hearing on prosecutive merit.
BRETT and LUMPKIN, JJ., concur.
PARKS, P.J., and LANE, V.P.J., concur in part, dissent in part.
PARKS, Presiding Judge, concurring in part, dissenting in part:
I agree with that part of the majority's opinion that holds that the confession is inadmissible because of the violation of appellant's right to counsel. I must disagree, however, with the conclusion that the juvenile judge's finding of amenability was not an abuse of discretion. The question presented in this case is whether the State has produced substantial evidence that shows that appellant is not amenable to treatment within the juvenile system, against the claim of appellant that he is amenable. In re E.O., 703 P.2d 192, 193 (Okl.Cr. 1985). After careful review of the record in this case, I am convinced that the State has not only failed to present substantial evidence against the claim of appellant, there is no credible evidence at all that appellant is not amenable.
I will not here attempt to define substantial evidence. To articulate with the requisite precision necessary to readily recognize a bright line distinction between what is substantial and what is less than substantial would be a futile endeavor. A case by case analysis is required to determine whether the evidence presented rises to a substantial level. The majority opinion, of course, correctly cites Stevens as the standard for review. However, I am unable to discover from the record how the majority determines that the trial court's conclusion and judgment was not clearly against the logic and effect of the facts presented.
In this case, the State presented two witnesses who testified on the amenability issue. One witness was a DHS supervisor, SS, and the other was a psychologist, Dr. J. SS testified that he had no information that would lead him to conclude that appellant was not amenable to rehabilitation. (Tr. 220-22). In fact, SS stated that the had "found nothing that would say he [appellant] would not be a good candidate for treatment." (Tr. 240). However, SS did testify that he believed that the statutes required him to "guarantee" the public safety if appellant remained within the juvenile system. (Tr. 184). Because he could not make such a guarantee, SS concluded that appellant was not amenable to treatment. Id. SS further stated, however, that he "[did] not really have a specific recommendation." Id. Not only did SS misconstrue the statute on the public safety issue, thereby rendering his conclusion on amenability invalid, his failure to find any reason why appellant was not amenable to treatment tends to support appellant's claim. Furthermore, SS based his public safety conclusion at least partly on the availability of beds at the facility. (Tr. *1126 203-04). Such determinations are not proper nor probative on the issue of amenability. See T.C. v. State, 740 P.2d 739, 743-44 (Okl.Cr. 1987). Therefore, when taken as a whole, SS's testimony presented no evidence against the claim of appellant, and could actually be interpreted as supporting appellant's claim.
The State's other witness, Dr. J, testified that appellant was not amenable based on the results of tests administered by herself and another psychologist. While courts must afford some deference to trained experts they are not required to surrender reason at the altar of expertise. Initially, I find it objectionable for the trial court to place any credence in this witness's testimony after she admitted to being biased against appellant. (Tr. 85). Dr. J even admitted that she would rather have conducted her tests at a different time because of her feelings toward appellant, but chose to conduct the tests anyway because of time constraints. (Tr. 85). Moreover, the evidence presented by this witness was so incredulous that only an unquestioned acceptance of an expert's unsupported conclusions would lead one to conclude that she presented persuasive evidence against appellant.
Dr. J apparently based her conclusion of non-amenability upon test results that were not shown to be connected to amenability, even accepting arguendo the results have a rational basis. First, Dr. J stated that appellant exhibits illogical thinking because he "bends reality" and fails to see the "big picture" based on two responses on the Rorschach (ink blot) test. (Tr. 34, 35). She reached this conclusion because appellant's perception of "the whole" of one of the blots was based on a small segment of that blot, and in another blot appellant perceived a person with an elephant-like head. Id. However, Dr. J offered no explanation of how these responses to patterns created by ink blots indicated that appellant was not amenable to treatment. Moreover, Dr. J's explanation for appellant's improved responses to the same test when given by another psychologist was not rational. Her explanation was that appellant had a chance to correct "odd responses" to the test. (Tr. 73). How a fifteen year old, or for that matter anyone not trained in the field, could know his responses to ink blots were "odd" and thereafter "correct them" is left unexplained by Dr. J. However, a rational explanation was offered by the other psychologist. (Tr. 306-07). Nonetheless, without attempting to fact find or weigh the credibility of one witness against the other, I do not need an expert to tell me that appellant could not have possibly conjured-up the "correct" responses to an ink blot test within the span of a few weeks, if it would be possible at all.
Further, Dr. J concluded that appellant identifies with criminals based on the form of one response to a question in the Wechsler test. In that question, appellant was asked "[in] effect why we lock criminals up and his answer was basically to protect the public so that we don't go around killing them." (Tr. 31). The inclusion of the word "we" is the apparent justification for concluding that appellant identifies with criminals. However, besides being the only response in this test so characterized, the test used was a standard intelligence test according to Dr. J (Tr. 42) and nowhere in the record is there a justification or connection made for interpreting intelligence test responses for personality testing purposes. Moreover, there was no testimony as to the significance of these findings on the issue of amenability.
Additionally, Dr. J testified that appellant could not be rehabilitated "on the theory" that he would not undergo a "great internal change" if he were left in the juvenile system. (Tr. 35). In an apparent attempt to support this "theory", the State followed this testimony with State's exhibit #2. This exhibit was a picture of a candle and holder that appellant drew for Dr. J. Apparently, this exhibit further indicated that appellant was not amenable to treatment. However, Dr. J not only failed to state the significance of the picture, as it related to the issue of amenability, but incredibly her analysis of the picture was, "I can't put my finger on it, but something bothers me about it." (Tr. 38).
*1127 Moreover, Dr. J concluded that appellant was not "very interested in other people." (Tr. 30). While never articulated as such, the unmistakable inference was that appellant lacks empathy for others. In fact, the trial judge cites Dr. J's "indication" that appellant does not identify with others, as the reason why appellant is not amenable in the Certification Order. Yet, the person who actually fired the weapon in this case was found by Dr. J to be "far more" empathetic than appellant. (Tr. 80). Dr. J explained this anomaly by stating, "I know its a puzzle to me." Id.
I am less than overwhelmed by the tentative testimony of this witness. Taking the sum of this "evidence" in the light most favorable to the State, I am unable to reasonably conclude that substantial evidence has been presented against the claim of appellant that he is amenable to treatment within the juvenile system. Appellant's claim that he was amenable to treatment was supported by two psychologists and two other experts in the field of determining amenability. The trial court took judicial notice of the expertise of three of these witnesses: one of the amenability experts and both psychologists. (Tr. 125, 249, 292-93). Notably, the trial court afforded no such deference to Dr. J nor any other witness for the State. While this Court will not weigh sheer numbers of witnesses on one side against the number of witnesses on the other, the State is required to present substantial evidence against the claim of amenability. This case is devoid of any rational evidence to dispute appellant's claim of amenability. For these reasons I respectfully DISSENT to this part of the majority holding.
LANE, Vice Presiding Judge, concurring in part, dissenting in part:
I am in agreement with the majority opinion in this case with the exception of the last line of the opinion which remands the case to the district court for a hearing on prosecutive merit. Nowhere in the body of the opinion does the majority discuss the reason for this remand. In my view, the determination of prosecutive merit at this point is solely within this Court's appellate review jurisdiction.
The trial court clearly determined that the case against R.J.D. presented sufficient merit to justify prosecution pursuant to 10 O.S.Supp. 1989, § 1112. The problem presented arises because the determination by the trial court was based in whole or in part on the improperly obtained confession by the juvenile. It is a function of our appellate jurisdiction to review the decision of the trial court in order to see if its ruling may be affirmed, supported by the remaining evidence presented at the hearing. Harvell v. State, 395 P.2d 331, 342 (Okl.Cr. 1964). I find that there is enough evidence to satisfy the trial court's conclusion that the case commands prosecutive merit.[1]
Section 1112 establishes the procedures by which juveniles are adjudicated to stand trial as adults. Subsection (b) of section 1112 provides:
Except as otherwise provided by law, if a child is charged with delinquency as a result of an offense which would be a felony if committed by an adult, the court on its own motion or at the request of the district attorney shall conduct a preliminary hearing to determine whether or not there is prosecutive merit to the complaint. If the court finds that prosecutive merit exists, it shall continue the hearing for a sufficient period of time to conduct an investigation and further hearing to determine the prospects for reasonable rehabilitation of the child if he should be found to have committed the alleged act or omission.
This Court has never addressed the meaning or the ramifications of the term "prosecutive merit" as used in the body of this statutory section. I am compelled by the processes involved to find that the term as used in this stage of the proceedings is something less than the "probable cause" *1128 standard applied during the preliminary examination which follows automatically if prosecutive merit and lack of rehabilitative prospects is found at the initial hearing.
Webster's Third International Dictionary 1414 (1963) defines merit as "legal significance, standing or importance." Using this definition, I conclude that the State is required only to prove that there is a reasonable likelihood that this offender committed the crime in question. This threshold standard requires that in its attempt to have the child certified as an adult offender, the State prove only that the case against the juvenile presents sufficient evidence to warrant a continuation of the proceedings. This proceeding is not a determination of the guilt of the offender and has no bearing on whether the child is ultimately convicted. The purpose of the procedure is simply to establish that further attempts at the prosecution of this juvenile will be done as an adult. After this adjudication is reached, the screening processes of a regular felony prosecution with their higher standards of proof, i.e. the probable cause standards of the preliminary examination, amply protect the offender from prosecution if the evidence is insufficient.
Applying these concepts in the present case, I find that exclusive of the illegally obtained confession, there is sufficient, though certainly not overwhelming, evidence to establish a significant likelihood that R.J.D. committed the crime in question, establishing the prosecutive merit required to continue the proceedings. At the hearing, the State presented evidence of a confession obtained from one of the other juveniles involved in the murder, R.D.H.[2] R.D.H. told the police officers that he and the two other juveniles involved in this crime went to the convenience store where the victim was killed with the intention of robbing it. R.J.D. went into the store first and K.D. followed a few seconds later. Soon after, R.D.H. heard a shot, and the other two boys came out of the store and put the gun in the car. K.D. then went back into the store and got the money from the register and some beer.
Additional evidence established R.J.D.'s uncle called the McCloud police station and asked for an officer to come and get R.J.D. because he wished to turn himself in. When the officer arrived at the house, the uncle came out carrying a gun. The officer asked, "Is this the gun?" The uncle replied, "yes."
I find that the evidence supports a finding of prosecutive merit in this case. Accordingly, I must dissent from the majority's remand for further proceedings on this issue.
NOTES
[1] Because I find that the issue of prosecutive merit is met by the record before the Court, I will not address my belief that the majority opinion violates the dictates of Section 1112(b) by finding that the trial court properly found against the child in terms of rehabilitative amenability without first finding that the case presents prosecutive merit.
[2] I express no opinion on the use of such evidence in a hearing of the nature. Since there was no objection by any party to its introduction, the evidence was properly before the trial court for its consideration.