805 P.2d 665 (1991)
M.L.S., an Alleged Delinquent Child, Appellant,
v.
STATE of Oklahoma, Appellee.
No. J-89-1260.
Court of Criminal Appeals of Oklahoma.
January 24, 1991.
Sherry T. Wallace, Oklahoma City, for appellant.
*667 Robert H. Macy, Dist. Atty., Mary H. Smith, Asst. Dist. Atty., Oklahoma City, for appellee.

*666 OPINION
LUMPKIN, Vice Presiding Judge:
Appellant, M.L.S. a fifteen (15) year old juvenile, was certified to stand trial as an adult by the juvenile division of the District Court of Oklahoma County on two counts of Robbery with Firearms, pursuant to Title 21 O.S. § 801, and two counts of Shooting with Intent to Kill, pursuant to Title 21 O.S. § 652, in JF-89-1449, JF-89-1450, JF-89-1451 and JF-89-1452 respectively. That certification was based upon a finding that there was prosecutive merit to the crimes charged and that M.L.S. was not amenable to rehabilitation within the juvenile system. An appeal has been properly perfected to this Court.
Before a juvenile may be certified to stand trial as an adult, two findings must be made by the juvenile judge: first, that there is prosecutive merit to the complaint; and second, that the juvenile is not amenable to rehabilitation within the existing juvenile system. See W.D.C. v. State, 799 P.2d 142 (Okl.Cr.1990); C.J.W. v. State, 732 P.2d 908 (Okl.Cr.1987).
Evidence presented at the prosecutive merit hearing and the certification hearing revealed that in the early morning of July 1, 1989, two employees of the Daily Oklahoman, Fred Woolridge and Benson Nwosu, were in the parking lot of Hamilton Liquor Store located at N.W. 36th and Kelly in Oklahoma City. Mr. Nwosu was sitting in his car with the window rolled up and Mr. Woolridge was standing outside the car when they were approached by two young men. One of the men had a shirt pulled up over his face, and the other was carrying a gun. The two young men demanded their money, which Mr. Woolridge and Mr. Nwosu handed over. The man with the gun then shot Woolridge several times and also shot Nwosu as he was running away. Shortly after the shooting, Oklahoma City Police Officers arrived at the scene where they obtained a description of several young men allegedly involved in the incident, along with the description of the vehicle in which they were last seen.
In his first assignment of error Appellant contends that the trial court erred by overruling his motion to suppress the statements he made to the police. He contends that because he was illegally arrested in his home, his subsequent statements to the police were tainted. In addition, he alleges that he and his mother were insufficiently advised of their constitutional rights at the time of his questioning by police. Because these issues are being raised at the prosecutive merit stage, we deem it necessary to review the purpose of this hearing at this juncture.
A prosecutive merit hearing in and of itself is not appealable. However, in W.D.C. this Court reasoned that in order to address certification, there must be a determination as to the sufficiency of the evidence before establishing the status of the offender for further prosecution. Hence, the order granting certification, which is a final appealable order under 10 O.S.1981, § 1112(e), includes the determination of prosecutive merit. In R.J.D. v. State, 799 P.2d 1122 (Okl.Cr.1990), Judge Lane's separate opinion addressed the ramifications of the term "prosecutive merit" as used in the body of 10 O.S.Supp.1989, § 1112, and stated:
I am compelled by the processes involved to find that the term as used in this stage of the proceedings is something less than the `probable cause' standard applied during the preliminary examination which follows automatically if prosecutive merit and lack of rehabilitative prospects is found at the initial hearing.
We find that Judge Lane accurately concluded that the State is required only to prove that there is a "reasonable likelihood" that the offender committed the crime in question for the purpose of finding prosecutive merit. In order to address certification, there must be a determination as to the sufficiency of the evidence before establishing the status of the offender for further attempts to prosecute.
*668 The procedures by which juveniles are adjudicated to stand trial as adults are found in 10 O.S.Supp.1989, § 1112, as follows:
Except as otherwise provided by law, if a child is charged with delinquency as a result of an offense which would be a felony if committed by an adult, the court on its own motion or at the request of the district attorney shall conduct a preliminary hearing to determine whether or not there is prosecutive merit to the complaint. If the court finds that prosecutive merit exists, it shall continue the hearing for a sufficient period of time to conduct an investigation and further hearing to determine the prospects for reasonable rehabilitation of the child if he should be found to have committed the alleged act or omission.
Therefore, for the purpose of continuity, we will address the issues raised as they relate to the (1) prosecutive merit phase; and (2) the certification phase.
The testimony of Sgt. Mullenix was that neither he nor Sgt. Burke entered or looked in the home for Appellant until his mother appeared and said he was there. No evidence was presented to refute that testimony. This Court has consistently held that police officers may arrest a suspect without a warrant upon information communicated to them by others. Stout v. State, 693 P.2d 617 (Okl.Cr.1984). Title 22 O.S.Supp.1990, § 196, provides in pertinent part:
A peace officer may, without a warrant, arrest a person
1. For a public offense, committed or attempted in his presence;
2. When the person arrested has committed a felony, although not in his presence;
3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it;
In support of his allegations the Appellant relies on Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which prohibits a warrantless arrest of a suspect in his home when entry into the home by the police is by force or without consent of any occupant. Here there was no force used or any evidence of entry without the consent of any occupant. Moreover, the record is void of any evidence that would support the allegation that the entry was anything but consensual, thereby rendering Appellant's arrest illegal. Smith v. State, 573 P.2d 713 (Okl.Cr.1977). Finally, the officers obtained the description and name of the Appellant as one of the young men involved from the alleged co-defendants, thus providing them with reasonable cause for the arrest. Therefore, based upon the evidence before us, we are unable to find this search, although warrantless, to be illegal.
Appellant next argues that his statement to the police should have been suppressed. The record is totally void as to any objection by Appellant regarding non-compliance with 10 O.S.1981, § 1109(A), which states in pertinent part that:
A. No information gained by questioning a child nor any evidence subsequently obtained as a result of such information shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer or investigative agency, or employee of the court, or the Department is done in the presence of the parents, guardian, attorney, or legal custodian of the child. No such questioning shall commence until the child and his parents, or guardian, or other legal custodian have been fully advised of the constitutional and legal rights of the child, including the right to be represented by counsel at every stage of the proceedings, and the right to have counsel appointed by the court if the parties are without sufficient financial means;
In addition, Appellant admits that his motion to suppress the introduction of his statements was based on the legality of his arrest. The record is silent as to any objection by Appellant that he was insufficiently advised of his rights by the police. Moreover, Appellant failed to show that he *669 did not knowingly waive his rights. Sgt. Mullenix read both Appellant and his mother their constitutional rights from a card he carried as follows:
You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements. Following that: Do you understand each of these rights I've explained to you? Having these rights in mind, do you wish to talk to us now? (P.M. TR. Vol. II, pg. 28, 48, 49).
The evidence further revealed that there was reasonable cause to believe that the Appellant was present in the vehicle of one of the suspects before, during, and after the robbery and shooting took place. In fact, he was seen standing on that vehicle at the scene during the robbery and shooting. The evidence also showed a reasonable likelihood that the Appellant was with the alleged perpetrators just before the robbery and shooting, when they all discussed going for a ride in another juvenile's green LTD. Therefore, excluding Appellant's statement to the police, the testimony of co-defendants and witnesses supported the trial judge's finding.
Based upon the foregoing, we find that the evidence is sufficient to show compliance with Section 1109(A). In addition, exclusive of the statement made by the Appellant, we find sufficient evidence to establish a reasonable likelihood that M.L.S. committed the crime in question.
Appellant alleges in his final assignment of error that the trial court abused its discretion in certifying Appellant to stand trial as an adult. Specifically, the Appellant alleges that there was insufficient evidence to show that he was not amenable to rehabilitation within the juvenile system. We agree.
The finding that a child is not amenable to rehabilitation within the juvenile system is a discretionary decision to be made by the judge, but the decision must be based on substantial evidence against the child's claim to the benefit of juvenile treatment. W.C.P. v. State, 791 P.2d 97 (Okl.Cr.1990). Substantial evidence was defined in Corbin v. United States, 10th Cir. 253 F.2d 646, at 649 (1958), and reiterated in W.C.P. at 98, as follows:
Substantial evidence is more than a scintilla. It must do more than create a suspicion of the existence of the fact to be established. We must consider the case as a whole and not piecemeal. The lines of proof must be considered together, not separately. Even if each line of proof taken by itself is of insufficient probative force, the conclusion does not necessarily follow that the proof taken as a whole is insufficient. The lines of proof interweave and support each other.
Section 1112(b) sets forth six (6) factors the trial judge must consider when determining the prospects for reasonable rehabilitation. In reviewing factor one and two, the nature of the offense, we find that the offenses involved are serious, violent and against other persons. However, at this juncture, the extent of Appellant's involvement in the chain of events is not clear and is yet to be determined in further proceedings by the trier of fact. The evidence shows that he remained with the vehicle and was not directly involved in the actual violent act perpetrated by the co-defendants. Factor three directs the court to consider the sophistication and maturity of the juvenile, in addition to his capacity to distinguish right from wrong. Dr. Herman Jones, a psychologist and the State's expert witness, testified that the Appellant had an I.Q. of 104, which placed him slightly above average, that he was aware of the nature of right and wrong, and the expectations that society placed on his personal behavior. In addition, Dr. Jones stated that Appellant's level of sophistication and maturity were consistent with his chronological age of 15 years. When asked to describe the likelihood of Appellant's rehabilitation, Dr. Jones answered:

*670 Based upon the information I have available, there is a probable fair likelihood that he would be able to be rehabilitated given the resources that are extant inside the juvenile justice system at this time and the time afforded by his chronological age. (C.T. 12).
Dr. Jones stated that his conclusion was based upon the Appellant's psychological makeup, his intellectual skills and sophistication, the shock produced by his arrest, the extended stay in Detention (approximately 110 days at that time), the possible outcome of the proceedings, and the utilization of the maximum degree of resources and time allotted within the juvenile justice system. The fourth factor considered by the trial court deals with Appellant's previous record and history of contact with the juvenile system. State's witness, Sharon O'Guinn, a probation officer for the Oklahoma County Juvenile Bureau and author of the certification study, clearly supported a finding that Appellant was amenable to rehabilitation within the juvenile system. Ms. O'Guinn testified that the Appellant had come to the attention of the juvenile system only on two prior occasions. On one occasion Appellant's mother reported him as a child in need of supervision. However, no petition alleging him to be in need of supervision was ever filed, nor were any services ever provided. On the second occasion the juvenile initiated a request for help himself by calling the police and reporting himself as an "abandoned child". Again, he was referred to Family Junction, a youth shelter, then released to his mother. O'Guinn further testified that one of Appellant's problems stems from the fact that he has not always had access to the available resources that he has needed because he has been in a "somewhat dysfunctional family". In conclusion, O'Guinn stated that she believed the Appellant to be amenable to rehabilitation in the juvenile system because he could utilize some of the services that the system has to offer, referring particularly to residential placement, or in the alternative, commitment to the Department of Human Services. The following factors in the testimony of the State's third witness, Roger Creesy, were stipulated to by the parties:
That there are secure residential facilities available for [M.L.S.]; that the placement of process consists of a team of individuals within DHS who look at the criteria; that DHS does control the placement of a juvenile; that his stay and length of stay at any particular place is determined by that institutional placement team as well as the parole board, which is a group of individuals who are hired by DHS to act as a parole board; and that they do have services available for him.
Donnie Lewis, an admissions counselor in the Juvenile Detention Center described the Appellant's behavior in detention as being somewhat of a "roller coaster". Lewis testified that Appellant's behavior fluctuated between good and disruptive. Lewis explained that his disruptive behavior included not obeying staff, inciting other residents to disobey staff, and a couple of fighting incidents with other residents. Lewis explained that initially Appellant was a pretty good resident for the first couple of weeks in detention, but as his stay in detention was prolonged he began to exhibit this change in behavior. However, she explained that since he has been a participant in an individual behavior management program for the last twenty or so days, he had become an excellent resident.
As we previously stated in W.C.P., the trial court's decision must be determined by the evidence presented on the record, just as our review is limited to the record. Here the State had the burden of proving that the Appellant was not amenable to rehabilitation and it failed to meet that burden. All of the evidence presented to the trial court supported Appellant's amenability to treatment in the juvenile system. Although the trial judge, in reaching his findings, was not required to give exclusive, controlling effect to the testimony of the expert, nevertheless, he was required to weigh the same, along with all the other evidence in the case. See W.C.P. at 100. It is true that the alleged offenses were committed against persons in an aggressive *671 and violent manner, although by another juvenile. It is also evidence from the evidence that the Appellant is able to distinguish right from wrong and understand the consequences of his act. However, the fact that the Appellant is accused of a serious act does not in and of itself answer the question of whether the Appellant is amenable to rehabilitation within the juvenile system. Clearly, the evidence showed just the opposite. Unlike that of certain other jurisdictions, there is no presumption built into Oklahoma's Juvenile Code that a child who has committed a very serious offense is not receptive to rehabilitative treatment. See W.C.P. at 100. As we succinctly pointed out in T.C. v. State, 740 P.2d 739 (Okl.Cr.1987), the provisions that permit the juvenile court to waive its exclusive jurisdiction and certify a child to stand trial as an adult contemplates the exceptional case in which the child is not amenable to treatment under the juvenile facilities and program. M.L.S. does not present the exceptional case. The Appellant's age, the fact that he has no significant prior contacts with the system, and the testimony of the State's own witnesses supports this child's claim of amenability.
Therefore, for the foregoing reason, we hold that the District Court's finding of nonamenability to rehabilitation within the juvenile system was not supported by the evidence, and the order of the Juvenile Division of the District Court waiving jurisdiction of the juvenile and certifying him to stand trial as an adult is, accordingly REVERSED and REMANDED to the Juvenile Division for further proceedings, and the stay imposed by this Court on January 22, 1990 is lifted.
BRETT and JOHNSON, JJ., concur.
LANE, P.J., specially concurs.
PARKS, J., concurs in results.
LANE, Presiding Judge, specially concurring.
While I am in agreement with the majority opinion, I write to further explain the posture of this case on remand. As it stands now, the case against M.L.S. has been prosecuted through the statutory procedures defined in 10 O.S.Supp.1989, § 1112, which allow a juvenile to be prosecuted as an adult under certain circumstances. As the majority explains, the two threshold criteria for certification of a juvenile to stand trial as an adult are that the complaint has prosecutive merit and the lack of amenability to rehabilitative opportunities existing within the juvenile system.
In this case, the majority adopts the analysis from my concurring opinion in R.J.D. v. State, 799 P.2d 1122 (Okl.Cr.1990) concerning the quantum of proof necessary to satisfy the statutory requirement of "prosecutive merit" and finds that based on the evidence "there is a `reasonable likelihood' that the offender committed the crime in question." The majority, however, disagrees, as do I, with the trial court's finding that there is no reasonable prospect for rehabilitation in the juvenile system.
With this procedural background, I believe that it is necessary to consider the further treatment of the case once it is received in the district court. Having denied the attempt to prosecute this child as an adult, the trial court must proceed under the sections of the statute dealing with the prosecution of juveniles. The first step in the process is an adjudication that the child is a delinquent. 10 O.S.Supp.1990, §§ 1103 and 1112. This is an absolute, jurisdictional requirement. Matter of J.L.M., 598 P.2d 243 (Okl.Cr.1979).
This initial hearing, known as an adjudicatory hearing, is defined in 10 O.S.Supp.1990, § 1101(8) as "a hearing to determine whether the allegations of a petition pursuant to the provisions of Section 1103 of this title are supported by the evidence and whether a child should be adjudged to be a ward of the court." This entails a finding specifically different than that of "prosecutive merit." The court must determine, quite simply, whether the allegations are supported by the evidence. This is a much higher standard than is utilized to determine prosecutive merit. Accordingly, a finding of prosecutive merit cannot substitute for an adjudication of delinquency. *672 The case then may proceed under 10 O.S.1981, § 1110.
I write primarily to point out these distinctions between the two types of proceedings so that there will no confusion when this case comes up for consideration in the district court. The fact that we have agreed that the case presented prosecutive merit for purposes of M.L.S.'s certification as an adult is no longer relevant to any proceedings. The case should proceed through the juvenile justice system as though it was brought there in the first place. With these additional comments, I am in complete agreement with the majority.